A. B. PARVIN, Plaintiff-Appellee and Cross-Appellant,

v.

DAVIS OIL COMPANY, Jack Davis, Marvin Davis, and Paul Messinger, Defendants-Appellants and Cross-Appellees.

Nos. 77-1663, 77-1664.

United States Court of Appeals, Ninth Circuit.

Nov. 26, 1979.

Certiorari Denied April 14, 1980. See 100 S.Ct. 1654.

Peter M. Appleton, Los Angeles, Cal., for Parvin.

J. Edd Stepp, Jr., Los Angeles, Cal., for defendants-appellants and cross-appellees.

Before CHAMBERS and HUFSTEDLER, Circuit Judges, and FITZGERALD,* District Judge.

HUFSTEDLER, Circuit Judge:

Parvin sued Davis Oil Company ("DOC") for damages arising from three investment contracts that Parvin contended violated both California and federal securities laws. The district court initially dismissed the action finding that (1) the oil and gas lease interests were not securities under either California or federal law, (2) the transactions did not involve sufficient contacts with California to permit application of California law; and (3) the transactions were private offerings exempted from the registration requirements of the Securities Act of 1933. We reversed (*Parvin v. Davis Oil Co.* (9th Cir. 1975) 524 F.2d 112), and we remanded the cause to the district court to decide whether the securities qualified un-

---

* Honorable James M. Fitzgerald, United States District Judge, District of Alaska, sitting by designation.

der the joint-venture exception to the California permit requirement and whether Parvin had the kind of access to information that would have appeared in the registration statement.

On remand, the district court found that these transactions failed to qualify under the joint venture exception under California law and that they failed to qualify under the private offering exception from the registration requirements under the Securities Act of 1933. The district court held further that DOC's failure to inform Parvin that the securities were not registered under either California or federal law constituted a violation of § 10(b) of the Securities and Exchange Act of 1934. Therefore, the district court decided that Parvin was entitled to the return of the money he had invested. The district court denied an award of prejudgment interest, exercising discretion that the court believed it had under applicable California and federal law.

DOC appeals from that portion of the judgment holding the joint venture exemption and the private offering exemption inapplicable. Parvin appeals from that portion of the judgment declining to award prejudgment interest.

Parvin is a retired California businessman who has had substantial experience with investment in oil and gas properties. DOC is a partnership composed of Jack Davis, Marvin Davis, and Jean Davis, which has its principal place of business in Denver, Colorado; it is engaged in oil and gas exploration. Parvin maintained a periodic social and business relationship with the Davises from the early 1960s until the beginning of this litigation. During 1968, DOC offered and sold to Parvin investments in three separate DOC oil and gas drilling programs, referred to respectively as the "Savoie," "Offset," and "Wildcat" programs.

The investors in the Savoie, Offset, and Wildcat leases were composed of three separate groups. Generally speaking, each group had been put together by a friend or a business associate of the Davises and was composed of that person and a number of his friends and business associates. Each member of the group signed an agreement with DOC that was identical with the agreement signed by everyone else, with the exception of the names of the parties, the percentages of their interests, the amounts of their payments, and the names of well prospects included. (Parvin himself was an exception to the extent that he did not execute a written agreement for the Savoie lease.)

The Davises never met with these investing groups, and there was no interaction between the different groups or their members. The Davises selected the leases to be invested in and the sites to be drilled. They also conducted both the exploration and the drilling. Under the terms of the agreement, the individual investors did have the right to receive daily drilling reports, final prints of all electrical surveys run, all core analyses, drill-stem test charts, completion reports and governmental and geographical reports. They also had free access to the derrick floor and to all information obtained in the course of drilling.

In the case of the Savoie lease, DOC drilled an unsuccessful well and none of the participants received any income from his interest in the project. The underlying oil and gas leases have, by their terms, expired. Parvin invested $15,000 in this project. DOC drilled four wells on the Offset project. Three of the wells were plugged and abandoned, and the leases underlying them have expired. The fourth well was sold to another company in 1969. Parvin paid DOC $92,651.78 and received a return of $2,008.67 on the Offset leases. Similarly, four wells were drilled under the Wildcat lease and three of the wells were plugged and abandoned. The fourth produced some oil for a time, but none recovered its costs. Parvin paid DOC $103,740.80 and eventually received a return of $4,422.71. If Parvin prevails under either California or federal law, he is entitled to rescind and to recover his investments, less the amount he has received.

I

This action arose under the old California Corporate Securities Law (Cal.Corp.Code

§§ 25000 et seq. (West 1954)), as amended as of January 2, 1969. Section 25100 of that law requires an issuer of a security, such as DOC, to obtain a permit before selling any security, unless it falls under one of the enumerated exemptions to that requirement. DOC argues that the joint venture requirement is applicable.

 California courts have defined a joint venture as "an undertaking by two or more persons jointly to carry out a single enterprise for profit." (*Stilwell v. Trutanich* (1960) 178 Cal.App.2d 614, 3 Cal.Rptr. 285, 288.) The California courts traditionally look to the intention of the parties to determine whether a joint venture existed. (*Holtz v. United Plumbing & Heating Co.* (1957) 49 Cal.2d 501, 319 P.2d 617, 620; *Stilwell v. Trutanich, supra.*) Typically, the inquiry addresses four factors: (1) "a community of interest in the subject of the undertaking"; (2) "a sharing in profits and losses"; (3) an " 'equal right' or a 'right in some measure' to control the conduct of each other and of the enterprise"; and (4) "a fiduciary relation between or among the parties." (*Id.* at 288; *Goldberg v. Paramount Oil Co.* (1956) 143 Cal.App.2d 215, 300 P.2d 329; *see Vicioso v. Watson* (C.D. Cal.1971) 325 F.Supp. 1071.) Whether a joint venture exists rests primarily on the facts of the individual case. (*Nelson v. Abraham* (1947) 29 Cal.2d 745, 750, 177 P.2d 931; *Spier v. Lang* (1935) 4 Cal.2d 711, 716, 53 P.2d 138; *Bank of California v. Connolly* (1973) 36 Cal.App.3d 350, 364, 111 Cal.Rptr. 468, 478.)

 On remand, the court below reexamined the evidence presented to it to determine whether a joint venture existed. It properly addressed, among other things, the control Parvin and the others exercised over the project. (*See id.*) By agreement, these investors were entitled to receive notices concerning the progress of the drilling, were afforded access to the drilling sites, and were allowed a voice in deciding whether to drill past the casing point. However, the court below looked beyond the written agreement "to all the facts and circumstances of the situation, including the sub-

sequent conduct of the parties." It determined that those decisions most affecting the ultimate success or failure of the enterprise were to be made solely by DOC. The court below also found that the parties themselves never intended to create a joint venture. Both of these findings are supported by the record. Accepting these findings of fact, as we must (Fed. Rules of Civ. Proc. 52), we are compelled to affirm the court's determination that no joint venture existed, that the exemption is inapplicable, and that DOC should have sought a permit before selling the securities to Parvin. Parvin properly asserted his right to rescind the transactions.

## II

Under California law, an award of prejudgment interest is governed by California Civil Code §§ 3287 and 3288. Section 3287(a) reads in relevant part: "Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day . . . ." Section 3288 provides: "In an action for the breach of an obligation not arising from contract, and in every case of oppression, fraud or malice, interest may be given, in the discretion of the jury." California courts have not always interpreted the two statutes consistently. In *Nathanson v. Murphy* (1957) 147 Cal.App.2d 462, 305 P.2d 710, the court held that whenever a noncontractual action arose, the question whether to award prejudgment interest lay in the discretion of the factfinder. DOC argues that this action to rescind the purchase of stock for failure to comply with the California Corporation Securities Act is treated as an action for fraud or for breach of implied warranty. (*See also Pepitone v. Russo* (1976) 64 Cal. App.3d 685, 134 Cal.Rptr. 709.) Because the court below declined to award prejudgment interest, DOC argues that we must affirm this portion of the judgment.

 DOC has not taken into account the more recent California cases interpret-

ing these statutes to require the awarding of prejudgment interest whenever the sum in question is capable of exact determination. In 1964, the California Supreme Court in interpreting section 3287 emphasized its reluctance to make mandatory awards of prejudgment interest turn on the form of the action. (*Mass v. Board of Education* (1964) 61 Cal.2d 612, 39 Cal.Rptr. 739, 394 P.2d 579.) In *Tripp v. Swoap* (1976) 17 Cal.3d 671, 131 Cal.Rptr. 789, 552 P.2d 749, the California Supreme Court expressly declined to limit § 3287(a) to contract actions. Moreover, the California Court of Appeals discussed the legislative history of §§ 3287 and 3288 at great length less than two years ago in *Levy-Zentner Co. v. Southern Pacific Transportation Co.* (1977) 74 Cal. App.3d 762, 794–98, 142 Cal.Rptr. 1, 22–25. It declared that "when sections 3287 and 3288 were adopted in 1872, the key distinguishing factor was not . . . whether the cause of action arose in tort or contract, but rather whether the damages were readily ascertainable." (*Id.* at 795, 142 Cal.Rptr. at 23.) It held that "prejudgment interest must be granted as a matter of right if, as a matter of law, damages are 'certain, or capable of being made certain by calculation.'" (*Id.* at 798, 142 Cal.Rptr. at 25. (footnote omitted).) Under California law, when the question of liability is open to dispute, but not the amount of damages, in the event that liability is found to exist, damages are considered "certain." (*Esgro Central Inc. v. General Insurance Co.* (1971) 20 Cal.App.3d 1054, 1060–61, 98 Cal.Rptr. 153, 157; *Continental Bank v. Blethen* (1970) 7 Cal.App.3d 178, 187, 86 Cal.Rptr. 485, 491.) Under *King v. United Commercial Travelers* (1948) 333 U.S. 153, 158, 68 S.Ct. 488, 92 L.Ed. 608, we are bound by *Levy-Zentner* unless there is pervasive evidence that the California Supreme Court would rule otherwise. Given both *Tripp* and *Mass*, we can see no such pervasive evidence, and DOC offers us none. We are well aware of the factors that would lead the lower court to decline to award pre-

judgment interest were it free to do so. However, California law requires awards of such interest as a matter of law, where, as here, the sum is certain.

 As we read *Mary. Pickford Co. v. Bayly Bros.* (1939) 12 Cal.2d 501, 86 P.2d 102, prejudgment interest should run from the time that the right to rescission arose, rather than the time the lawsuit was filed.

Because California law is dispositive, we do not reach any of the federal questions.

The cause is remanded to the district court to compute interest. In all other respects, the judgment is affirmed.