**In re PAGO PAGO AIRCRASH OF JANUARY 30, 1974.**

**MDL No. 176.**

United States District Court,
C. D. California.

Oct. 9, 1981.

Belli & Choulos, San Francisco, Cal., Paul F. Cronin, Honolulu, Hawaii, Ferguson, Ferguson & Newburn, La Jolla, Cal., Kreindler & Kreindler, New York City, Bernal L. Lewis, Woodside, Cal., Morgan, Wenzel & McNicholas, Los Angeles, Cal., Gerald C. Sterns, San Francisco, Cal., Butler, Jefferson & Dan, Los Angeles, Cal., Demanes & Bailey, Burlingame, Cal., Magana, Cathcart, McCarthy & Pierry, Los Angeles, Cal., Simons & Schlesinger, Hollywood, Fla., Hagenbaugh & Murphy, Los Angeles, Cal., for plaintiffs.

Tucker & Coddington, O'Melveny & Myers, Los Angeles, Cal., Dept. of Justice, Civ. Div., Aviation Unit, Tort Claims Section, Washington, D. C., Johnsen, Manfredi & Thorpe, Overton, Lyman & Prince, Los Angeles, Cal., for defendants.

## MEMORANDUM ORDER RE: PREJUDGMENT INTEREST

WM. MATTHEW BYRNE, Jr., District Judge.

### I. INTRODUCTION

These consolidated wrongful death and personal injury cases arise out of the crash of a Pan American World Airways, Inc. ("Pan Am") Boeing 707 in Pago Pago, American Samoa, on January 30, 1974, in which ninety-seven persons died and the four survivors were injured. After four years of multi-district litigation proceedings, international discovery, motions practice, myriad hearings before two judges and a special master, and over forty days of pre-trial conference, all cases were jointly tried before the Court and a jury on the bifurcated issue of the liability of the several defendants. The "liability" trial lasted 108 trial days and concluded in the jury finding Pan Am liable for the crash, and the jury and Court finding all other defendants not liable. One of a series of special interrogatories put to the jury asked whether Pan Am was guilty of "wilful misconduct," as that term had been defined in the jury instructions. The jury answered that interrogatory in the affirmative.

Although some of the cases were settled or dismissed, twenty cases proceeded to separate trials before juries on the bifurcated issue of damages. These damage trials were tried under the laws of five different states. Final judgments in all these cases have been filed and entered.

This Court has ruled on the issue of whether awards of prejudgment interest would be included in the judgments in the "damage" cases and, if so, on what portions of the judgments such awards would be made. This order is now filed for the dual purposes of explaining more fully this Court's ruling on interest and setting forth the factual findings on which the specific prejudgment interest awards in each case are based.

### II. CHOICE OF LAW

Plaintiffs have urged this Court to find that federal common law applies to these cases and authorizes an award of prejudgment interest on the entire amount of the judgment from the date of the crash in each case. Plaintiffs rely primarily upon *City of Burbank v. Lockheed Air Terminal, Inc.*, 411 U.S. 624, 93 S.Ct. 1854, 36 L.Ed.2d 547 (1973), in arguing that federal law controls, and upon analogies to cases decided under the Jones Act, the Interstate Commerce Act, the securities laws, or under admiralty law, in describing what the controlling federal common law might be. When the issue of what law applies has been raised previously, this Court has consistently ruled that federal common law would not be applied, and it will not now be applied to plaintiffs' claims for prejudgment interest.[1]

In diversity cases, state law governs the award of prejudgment interest. *See United California Bank v. THC Financial Corp.*, 557 F.2d 1351, 1360–61 (9th Cir. 1977); *d'Hedouville v. Pioneer Hotel Co.*, 552 F.2d 886, 895 (9th Cir. 1977); *Michael-Regan Co. v. Lindell*, 527 F.2d 653, 659 (9th Cir. 1975); *Hunt Foods, Inc. v. Phillips*, 248 F.2d 23, 26 (9th Cir. 1957). There is, however, a question as to which state's law should govern this issue. This Court, sitting in diversity, must apply the law of the forum state, including its choice of law principles, to resolve that question. *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313

---

1. *See Bowen v. United States*, 570 F.2d 1311, 1316–17 (7th Cir. 1978); *Polansky v. Trans World Airlines, Inc.*, 523 F.2d 332, 338 (3d Cir. 1975); *McCord v. Dixie Aviation Corp.*, 450 F.2d 1129, 1131 (10th Cir. 1971); *Lockwood v. Astronautics Flying Club, Inc.*, 437 F.2d 437, 439 (5th Cir. 1971); *Order re Punitive Damages*, MDL Docket No. 176–WMB (August 14, 1978), at 3.

U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). California choice of law principles utilize a "governmental interest analysis." *See Hurtado v. Superior Court,* 11 Cal.3d 574, 114 Cal.Rptr. 106, 522 P.2d 666 (1974); *Reich v. Purcell,* 67 Cal.2d 551, 63 Cal.Rptr. 31, 432 P.2d 727 (1967). Accordingly, this approach must be applied by this Court to determine which state's law should control.

The interest of any particular jurisdiction in the application of its law on prejudgment interest turns upon the policy served by that law. For reasons elaborated upon below, the Court concludes that the purpose of awarding prejudgment interest is to compensate a plaintiff fully for the injury he or she has suffered.

■ The parties have not so much pointed to actual conflicts among the policies underlying the question of whether prejudgment interest should be awarded in these cases as to differences among the definitions of the states concerned herein of when an award of prejudgment interest is necessary for an injured person to be considered fully compensated by his or her award. That is, the several states involved allow prejudgment interest on different portions of different kinds of awards, which run from different dates, at different rates of interest. Following the analysis set forth in *Hurtado* and *Reich,* this Court concludes that the jurisdiction with the greatest interest in defining when an injured person has been fully compensated is the jurisdiction in which the person is domiciled. Furthermore, in these cases, the Court has applied the general damage law of the jurisdiction in which the decedent or surviving passenger was domiciled at the time of the accident. It is most consistent with that ruling that this same law control the determination of prejudgment interest in each of these cases.

Because no party has presented or urged the application of foreign law in those cases in which the decedent or surviving passenger was domiciled in a foreign country, the Court has applied, and with regard to prejudgment interest will apply as well, the law of California in such cases. The law of California, therefore, will be applied in the majority of cases.

### III. CALIFORNIA LAW

■ Three provisions of the California Civil Code authorize an award of prejudgment interest: sections 3287(a) & (b) and 3288. Grouped under the general heading, "Interest as Damages," those sections read, in pertinent part, as follows:

§ 3287. *Interest on damages; right to recover; time from which interest runs*

(a) Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or the act of the creditor from paying the debt. . . .

(b) Every person who is entitled under any judgment to receive damages based upon a cause of action in contract where the claim was unliquidated, may also recover interest thereon from a date prior to the entry of judgment as the court may, in its discretion, fix, but in no event earlier than the date the action was filed.

§ 3288. *Interest on damages; noncontractual obligation; discretion of jury*

IN ACTIONS OTHER CONTRACT. In an action for the breach of an obligation not arising from contract, and in every case of oppression, fraud, or malice, interest may be given, in the discretion of the jury.

Cal.Civ. Code §§ 3287 and 3288 (West 1970). The law of California with regard to the applicability of each of the above sections, and the standards to be applied under each, is far from clear. *See Parvin v. Davis Oil Co.,* 655 F.2d 901, 904–905 (9th Cir. 1979), *cert. denied,* 445 U.S. 965, 100 S.Ct. 1654, 64 L.Ed.2d 241 (1980). The Court relies, in part, for its conclusions on the few cases that offer specific standards under each section, with particular reference to the most recent California Supreme Court opinion on the subject, *Greater Westchester Homeowners Association v. City of Los Angeles,*

26 Cal.3d 86, 160 Cal.Rptr. 733, 603 P.2d 1329 (1979), *cert. denied*, 446 U.S. 933, 100 S.Ct. 2149, 64 L.Ed.2d 786 (1980). Perhaps the most relevant analysis, however, may be derived from the policy underlying, and the structure of, the statutory scheme for prejudgment interest in the State.

### A. The Appropriate Statute

#### 1. Section 3287(a)

By its terms, section 3287(a) of the California Civil Code applies to all actions for damages, referring as it does to "[e]very person who is entitled to recover damages . . . ." Defendant Pan Am contends that section 3287(a) applies only to actions sounding in contract, not those sounding in tort. Pan Am's argument is two-fold. First, it contends that because section 3287(a) is limited to persons entitled to recover damages "certain or capable of being made certain by calculation . . .," it is limited in application to cases involving a contract providing for a liquidated damage sum or a method of calculating damages. Second, Pan Am argues that because section 3288 reads, "[i]n actions other than contract," the two sections must be read exclusively. The Court rejects both of these arguments.

In *Levy-Zentner Co. v. Southern Pacific Transportation Co.*, 74 Cal.App.3d 762, 142 Cal.Rptr. 1 (1977), the California Court of Appeal reversed a trial court ruling that prejudgment interest could not be awarded under section 3287(a) in a tort action for damage to real or personal property. 74 Cal.App.3d at 797–98, 142 Cal.Rptr. at 24. The court noted that "when sections 3287 and 3288 were adopted in 1872, the key distinguishing factor was not . . . whether the cause of action arose in tort or contract, but rather whether the damages were readily ascertainable." *Id.* at 795, 142 Cal.Rptr. at 23. The court further noted that the legislature had specifically limited the scope of section 3288 to noncontractual actions and of section 3287(b) to contract actions, but had not limited the scope of section 3287(a). The court concluded that if the legislature had intended to limit the sec-

tion's application, it would have done so specifically. *Id.* at 796, 142 Cal.Rptr. at 23.

The specific holding in *Levy-Zentner* left open the applicability of section 3287(a) to actions involving personal injury rather than injury to property. Indeed, the court stated:

> We think tort actions for property damages, like the instant one, where the value of the property destroyed can readily be calculated by reference to market values or expert testimony, are more analogous to actions in inverse condemnation or contract than actions involving torts to the person.

*Id.* at 797–98, 142 Cal.Rptr. at 24. To the extent the quoted language reflects a disinclination to extend the application of section 3287(a) to torts to the person, this Court believes it misguided. The distinction drawn by the legislature is between certainty and uncertainty, and actions sounding in a tort to the person should not arbitrarily be excluded from application of the section on the conclusory basis that personal injury cases are *more likely* to be uncertain. The *Levy-Zentner* court does not appear to have actually intended to exclude personal torts; rather, it seemed to have indicated merely that there is a spectrum of certainty relevant to determining the applicability of section 3287(a), and that the case before it fell closer to the most certain than to the least certain. This Court reads *Levy-Zentner* in light of the Ninth Circuit's discussion of it in *Parvin*, 655 F.2d at 905 (focusing on the "certainty" of the damages). Thus, section 3287(a) may, under appropriate circumstances, be applied to actions for personal injury.

Plaintiffs cannot recover prejudgment interest under section 3287(a), however, unless the damages that they are entitled to recover are "certain or capable of being made certain by calculation." In *Esgro Central, Inc. v. General Insurance Co. of America*, 20 Cal.App.3d 1054, 98 Cal.Rptr. 153 (1971), the California Court of Appeal stated that section 3287(a) applies to situations "where there is essentially no dispute between the parties concerning the basis of

computation of damages if any are recoverable but where their dispute centers on the issue of liability giving rise to damage." 20 Cal.App.3d at 1060, 98 Cal.Rptr. at 157. That court refused to allow prejudgment interest under section 3287(a) on a recovery of damages upon an insurance policy that protected against losses due to business interruption, stating:

> The extent of that loss and appellants' resulting damage depended upon a judicial determination to be made from conflicting evidence. It was not ascertainable from data furnished by appellants to respondent. The extent of business interruption loss depended upon a projection of appellants' earning based upon past experience, a fact that may or may not have been determinable from past data, and upon a determination of the permissible duration of the interruption of business, a fact which most certainly was not readily determinable on the facts here present.

20 Cal.App.3d at 1063, 98 Cal.Rptr. at 159. Until the verdicts in the damage trials were rendered, there likewise was considerable "dispute between the parties concerning the basis of computation of damages," in these cases. In nearly every case there were factors to be considered that were not susceptible of ready and certain calculation, including the projection of future earnings, the possibility of professional advancement, and the value of lost consortium, factors that were in need of a factfinder's resolution. The Court concludes that it would be inappropriate to award prejudgment interest to plaintiffs under section 3287(a) because the damages that they are entitled to recover from Pan Am were neither "certain" nor "capable of being made certain by calculation."

2. *Section 3287(b)*

Section 3287(b) is available only to those persons who are entitled to recover damages "based upon a cause of action in contract." Although contracts of carriage were involved in these cases, plaintiffs have disclaimed any intention of suing on the contracts themselves and these lawsuits, from at least the point of the pre-trial conference, were tried solely upon tort theories of liability. Consequently, plaintiffs cannot, and do not now, rely upon this section in arguing for the award of prejudgment interest.

3. *Section 3288*

Section 3288 provides that the trier of fact[2] may award prejudgment interest "[i]n an action for the breach of an obligation not arising from contract, and in every case of oppression, fraud, or malice . . . ." The language of the section is clearly disjunctive: prejudgment interest may be awarded in actions not arising out of contract, *and* it may be awarded in *every* case of oppression, fraud, or malice. The purpose of including the latter clause was to insure that the trier of fact would be allowed to award prejudgment interest in contract actions that also involved oppression, fraud, or malice.

A party need not prove both breach of a noncontractual obligation and oppression, fraud, or malice to recover interest under section 3288. *Bullis v. Security Pacific National Bank*, 21 Cal.3d 801, 814, 148 Cal.Rptr. 22, 29, 582 P.2d 109, 116 (1978). Once the breach of a noncontractual obligation has been proven, as it has in these cases, the trier of fact has the discretion to award prejudgment interest. In these cases, the parties have stipulated that, although the cases were tried to juries, the Court may exercise the discretion granted to the trier of fact under section 3288.[3]

---

**2.** Although the statute's language grants such discretion to "the jury," the California Supreme Court has interpreted the statute to grant this same discretion to the trial judge, when acting as the trier of fact. *Bullis v. Security Pacific National Bank*, 21 Cal.3d 801, 814 n.16, 148 Cal.Rptr. 22, 29 n.16, 582 P.2d 109, 116 n.16 (1978).

**3.** COURT: Rather than present the issue [of prejudgment interest] to the jury by way of a special interrogatory, counsel have discussed the possibility and feasibility of having that issue decided . . . . If there is a factual issue, the parties agree that that factual issue will be determined nonjury, that that determination will be made by me, Judge Byrne, in all

The questions to be resolved are what standard is to be applied by the Court in deciding whether or not to award prejudgment interest, and, if such interest is to be awarded, how it is to be determined.

### B. *The Standard under Section 3288*

█ The policy underlying authorization of an award of prejudgment interest is to compensate the injured party. The article of the California Civil Code in which section 3288 is found is entitled "Interest *as Damages*" [emphasis supplied]. The primary purpose of the law of damages in California, as elsewhere, is to compensate the plaintiff *fully* for the injury suffered. Section 3333 of the Civil Code, which codifies this objective, states:

> For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this Code, is the amount which will compensate for *all* the detriment proximately caused thereby, whether it could have been anticipated or not. [emphasis supplied].

Similarly, Section 3300 of the Civil Code provides:

> For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this Code, is the amount which will compensate the party aggrieved for *all* the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom. [emphasis supplied].

Prejudgment interest is an element of the compensatory damages that are generally provided for in sections 3333 and 3300 of the Civil Code and is not an element of punitive or exemplary damages. *See Bullis*, 21 Cal.3d at 815, 582 P.2d at 117, 148 Cal. Rptr. at 30;[4] *Nordahl v. Franzalia*, 48 Cal.

of the damage cases, whether they were tried by me or tried by some other judge; that no party, by agreeing to this nonjury determination of what may be a factual issue under 3288, waives in any way their position that there is no factual issue under 3288, and that the determination is solely a matter of law.

. . . . .

Did I correctly state the agreement?
PLAINTIFFS: (CATHCART) I think so.
DEFENDANT: (PAN AM) I think so.
COURT: Plaintiff?
PLAINTIFFS: Well it is satisfactory as long as it is clear in the record that we urge that the law of damages apply to the damage case to the extent that law also speaks to the subject of prejudgment interest and post-judgment interest also applies.

. . . . .

COURT: Do you all agree?
DEFENDANT: (PAN AM) Yes, Your Honor.
COURT: [L]et's get this stipulation today on the record. Everybody agrees to this; is that correct?
PLAINTIFFS: (CATHCART) Yes, Your Honor.
PLAINTIFF: (LEBOVITS) Yes.
Reporter's Transcript, Nov. 21, 1978, at 3, 5, 7, 8.

4. In *Bullis*, the heirs of an estate brought suit against a bank for damages allegedly caused by the bank's failure to require the signatures of both of the estate's coexecutors for withdrawals from an estate account. The trial court held that the bank was liable on three grounds:
(1) breach of the common law duty to use reasonable care in conducting its affairs with depositors; (2) violation of California Probate Code § 570; and (3) breach of its deposit contract with the estate. It appears from the Supreme Court's opinion that the trial court awarded prejudgment interest under sections 3287(a) and 3288 on each unauthorized withdrawal from the date of the withdrawal. 21 Cal.3d at 808, 582 P.2d at 112, 148 Cal.Rptr. at 25.

The opinion of the Court is somewhat confusing. Initially, the Court appears to address the wrong issue:

> Relying on Civil Code section 3288, the trial court awarded respondents prejudgment interest on each unauthorized withdrawal from the date of the withdrawal.... Appellant concedes respondents are entitled to prejudgment interest from the effective date of the filing of the complaint until the entry of judgment. However, appellant challenges any award of prejudgment interest calculated from the date of withdrawal rather than from the date the complaint was filed. [footnotes omitted].

21 Cal.3d at 814, 582 P.2d at 116, 148 Cal.Rptr. at 29.

The only section that authorizes an award of interest from the effective date of the filing of the complaint is section 3287(b), which is nowhere mentioned in the opinion. This Court can only conclude that appellants made their concession based upon the trial court's holding of liability on the contract cause of action. Under section 3287(a), the court is clearly authorized to award interest from the date on which damages are certain or capable of being made certain. The Supreme Court noted:

App.3d 657, 665, 121 Cal.Rptr. 794, 799 (1975). The *Nordahl* court, therefore, recognized that

> [t]he inclusion of interest in the verdict . . . is not the granting of damages in excess of the loss incurred. When, by virtue of the fraud or breach of fiduciary duty of the defendant, a plaintiff has been deprived of the use of his money or property and is obliged to resort to litigation to recover it, *the inclusion of interest in the award is necessary in order to make the plaintiff whole.* [emphasis supplied].

48 Cal.App.3d at 665, 121 Cal.Rptr. at 799. The plaintiff is entitled to be placed in the same position that he would have been in, from a monetary standpoint, had the breach of duty not occurred. *See Ruth v. Lytton Savings & Loan Association of Northern California,* 272 Cal.App.2d 24, 26, 76 Cal. Rptr. 926, 927 (1969). That result can be achieved only if the plaintiff is placed in the position he would have been in had he been compensated for his injuries at the time the injuries were incurred. An individual who must litigate to recover damages should be placed in the same position, when he recovers, as the individual who recovered the day he suffered an injury. Otherwise, the tortfeasor benefits from denying liability and continuing to litigate, while he retains the use of money to which the plaintiff is entitled, and the plaintiff is deprived of the benefit he should have derived from an immediate recovery. As the California Supreme Court has recently explained, "[t]he

> The date on which the estate suffered the loss represented by each withdrawal was readily ascertainable and stipulated to by the parties.

21 Cal.3d at 815, 582 P.2d at 117, 148 Cal.Rptr. at 30. It would, therefore, appear that the trial court's award was fully supported by section 3287(a) and the discussion of the award in terms of section 3288 was probably unnecessary.

Nevertheless, the Court's opinion clarifies the compensatory nature of prejudgment interest. In upholding the trial court's award, the Supreme Court emphasized that the estate had been "deprived of the use of a quarter of a million dollars," and that the trial court's award was designed "to compensate respon-

award of such interest represents the accretion of wealth which money or particular property could have produced during a period of loss." *Greater Westchester,* 26 Cal.3d at 102–03, 603 P.2d at 1337, 160 Cal.Rptr. at 741. Such an award is all the more necessary in a group of cases such as the instant ones, where the complexity of the proceedings and the positions of the parties have so long kept the plaintiffs' rightful recovery in the defendant's bank account.

Some cases in California and elsewhere focus on the purpose of prejudgment interest as encouraging settlement and penalizing delays in payment. *See, e. g., Levy-Zentner,* 74 Cal.App.3d at 799, 142 Cal.Rptr. at 25; *Busik v. Levine,* 63 N.J. 351, 307 A.2d 571, *appeal dismissed,* 414 U.S. 1106, 94 S.Ct. 831, 38 L.Ed.2d 733 (1973). That approach, however, is contrary to the weight of authority, discussed above, to the effect that prejudgment interest is compensatory and not punitive. Moreover, the approach is also reasoned wrongly. Ideally, the imposition of prejudgment interest should function to equalize the balance between settlement and litigation for a defendant.[5] Knowing that he will pay interest on any eventual judgment, the defendant will consider only whether he has a case for non-liability or reduced liability in deciding whether to litigate. If the defendant prevails on the issue of liability he will, of course, pay nothing. If, however, he is found liable, the economic loss to him will be what it would have been had he made payment on the date of the injury to plaintiff.

dents for the negligent loss of funds from the estate's checking account." 21 Cal.3d at 815, 582 P.2d at 117, 148 Cal.Rptr. at 30. The Court appears to have affirmed the award largely because prejudgment interest was necessary to compensate the plaintiffs fully for the injury that they had suffered as a result of the defendants' conduct.

5. Inasmuch as prime interest rates are now double-digit, this goal is not well-satisfied by the seven percent maximum interest rate presently permitted under California law, *see* Cal. Const.Art. 15 § 1, but the failure to fully meet this goal can only be remedied by the legislature or people of California and not by the federal courts.

The distinctions contained in the statutory scheme provide further support for interpreting the award of prejudgment interest as compensatory. Section 3287(a) *requires* an award of interest on damages "certain or capable of being made certain by calculation." Where damages are certain, or capable of being made certain by calculation, it is possible to determine the exact amount that the plaintiff was entitled to on a specific date. The "liquidated" amount is the amount that would have made the plaintiff whole on the date of the breach. In contract cases, liquidated damages, are what the parties agreed would fully compensate plaintiff at the time of breach. Prejudgment interest on that amount is necessary to place the plaintiff after trial in the position he would have been in had he recovered on the date of the breach.

Section 3287(b) grants the court discretion to award prejudgment interest in contract actions where the damages are not ascertainable prior to the verdict. Once a verdict is returned, the court knows the amount required to compensate plaintiff for his injury. Nevertheless, the court may award interest only from the date of the filing of the complaint; any award, in such cases, is not mandatory. In general, the law encourages the resolution of private claims through the bargaining process. It may be that during the period between the breach of a contract and the filing of a complaint, the parties are engaged in a reconsideration of their bargain. Given the possible bargaining position of the parties during this period, it would be unfair to impose the cost of the bargaining process on the defendant who, in good faith, engaged in negotiations. Thus, section 3287(b) provides that the court has discretion to award interest only from the date of the filing of the complaint.

Two reasons are apparent for making discretionary, rather than mandatory, the court's award of prejudgment interest under section 3287(b). First, the court may conclude that the damage award already includes an amount beyond that which would have made the plaintiff whole on the date of the breach. If evidence has been presented on the injury suffered as a result of a delay in recovery, the award may contain compensation for that injury. Second, the award may include compensation for consequential damages that will not be incurred by the plaintiff until after the entry of judgment. In such a case, the plaintiff has not been deprived of the use of any money or property during the period between the breach and the judgment, and he is, therefore, not entitled to recover interest on such post-judgment consequential damages. Thus, the court must consider the facts of each case to determine whether prejudgment interest is necessary to compensate fully the plaintiff.

Section 3288 gives the trier of fact the discretion to award prejudgment interest from any appropriate date in actions not arising out of contract, and in actions involving oppression, fraud, or malice.[6] Contract actions involving an element of oppression, fraud, or malice are removed from the "filing of the complaint" time limitation of section 3287(b) because the trier of fact need not be concerned that it may be disturbing the bargaining process: the defendant's conduct has corrupted that process. The reasons for not imposing any costs of the process on the defendant have, therefore, disappeared.

Prejudgment interest under section 3288 is discretionary, however, because, as under section 3287(b), each case requires a determination as to whether interest is necessary to make the plaintiff whole. Again, it may be that the damage award will include com-

---

**6.** In a supplemental filing, Pan American has raised the contention that section 3288 of the California Civil Code is unconstitutionally vague. Read in conjunction with the other damage provisions of the Civil Code, section 3288 is to be applied to compensate a plaintiff for his injuries. Given the gloss on that section by numerous California court decisions, such a standard is no more vague than the general damage standards contained in sections 3300 and 3333 of the Civil Code, or the standards applied with regard to almost all kinds of damage awards. The Court, therefore, holds that section 3288 is not unconstitutionally vague.

pensation for any delay in payment. It may also be that the damage award itself includes an amount that the plaintiff would not have been able to use during the time between the breach of duty and the judgment, even if he had been compensated at the time of the breach. Interest on a portion of such an award would not be necessary to place the plaintiff in the position he would have been in had he been made whole immediately after the breach. This situation is reflected in portions of many of the verdicts rendered in the *Pago Pago* cases.

In most of the cases before this Court, the damages awarded are principally based upon the loss of the future earnings of a spouse or parent. These awards are based on the present value, at the time of trial, of the future earnings—that is, the amount necessary in 1978 or 1979 to ensure that the plaintiff will possess the amount in any given year that he would have possessed if not for the breach of duty by Pan Am. If damages had been recovered in 1974 instead of 1978 or 1979, plaintiffs would have been entitled to the present value at that date of the future earnings—that is, the amount necessary in 1974 to ensure that plaintiff would have the correct amount in later years. The difference between what would have been recovered as present value in 1974 and what is actually recovered in 1978 or 1979 represents an approximation of the amount that would have been earned on the 1974 amount in the intervening period. Thus, to the extent that the award of damages is for earnings lost after 1978, the fact that the award is reduced to the present value as of 1978 (instead of as of 1974) accounts for the delay in payment of this loss since 1974. Prejudgment interest on such a portion of an award is, therefore, not necessary to place plaintiff in the position he would have been in had he been made whole at the date of the injury.

However, to the extent that plaintiffs recover for earnings lost in the period from the date of the accident to the date of the verdict, they have been deprived of "the accretion of wealth [that those earnings] could have produced" from the time those earnings would have accrued to the time of the verdict. *See Greater Westchester*, 26 Cal.3d at 103–04, 603 P.2d at 1337, 160 Cal.Rptr. at 741. Interest on these interim earnings from the time that they would have been earned to the time of the verdict is, therefore, necessary to compensate plaintiffs fully for their injuries.

In addition to including an award for the present value at the time of trial of lost earnings that would not have been earned until after the time of trial (on which no prejudgment interest should be awarded), it might also be the case, especially in actions such as these, which do not arise out of contract, that the award could include amounts that do not replace any item of a pecuniary nature on which interest during the period between injury and trial could have been earned had the injury not occurred.

Although there was some considerable confusion about whether an award of prejudgment interest on damages representing noneconomic losses was permissible under California law, the California Supreme Court resolved the issue in late 1979. In *Greater Westchester*, the Court reversed a trial court's award of prejudgment interest, under section 3288 of the California Civil Code, in a nuisance action for personal injuries and emotional distress caused by noise from aircraft using a municipal airport. The Court first stated that

> [w]e have recently affirmed that, unlike Civil Code section 3287, which relates to liquidated and contractual claims, section 3288 permits discretionary prejudgment interest for unliquidated tort claims. (*Bullis v. Security Pac. Nat. Bank* (1978) 21 Cal.3d 801, 814–815, 148 Cal.Rptr. 22, 582 P.2d 109).

26 Cal.3d at 102, 603 P.2d at 1337, 160 Cal.Rptr. at 741. It then emphasized that its past rulings had limited such awards to particular kinds of losses:

> In *Bullis*, we characterized prejudgment interest as "awarded to compensate a party for the loss of his or her *property*." (*Id.*, at p. 815, 148 Cal.Rptr., at p. 30, 582

P.2d, at p. 117, italics added; see also *Nordahl v. Department of Real Estate* (1975) 48 Cal.App.3d 657, 665, 121 Cal. Rptr. 794, 799 ["deprived of the use of his money or property"].) [emphasis in original].

*Id.* The Court, therefore, noted that the award of prejudgment interest "represents the accretion of wealth which *money or particular property* could have produced during a period of loss." [emphasis supplied]. *Id.* at 102–03, 603 P.2d at 1337, 160 Cal.Rptr. at 741. It reasoned that, with regard to a specific sum of money or property subject to specific valuation, "a fact finder can usually compute [the interest] with fair accuracy" using recognized and established techniques. *Id.* at 103, 603 P.2d at 1337, 160 Cal.Rptr. at 741. Furthermore, the Court commented that, with regard to such losses, interest could be computed accurately because the date of loss of the property is usually ascertainable. *Id.*

By contrast, the Court stated,

damages for the intangible, noneconomic aspects of mental and emotional injury are of a different nature. They are inherently nonpecuniary, unliquidated and not readily subject to precise calculation. The amount of such damages is necessarily left to the subjective discretion of the trier of fact. Retroactive interest on such damages adds uncertain conjecture to speculation. Moreover where, . . . the injury was of a continuing nature, it is particularly difficult to determine when any particular increment of intangible loss arose. Acknowledging the problem, the trial court arbitrarily resorted to an "averaging" method applied to both the amount and duration of the loss. In our view this process was impermissibly speculative.

Furthermore, a fact finder in assessing a claim of general damages for physical,

mental and emotional suffering, possesses full authority to consider the duration of the alleged suffering. Accordingly, the disallowance of any interest on such a claim does not deprive the claimant of compensation for an element of actual damage. To the contrary, its allowance, in fact, may in a given case create a double recovery.

For the foregoing reasons, some respected commentators have disapproved the allowance of prejudgment interest on a claim of general damages for suffering. . . . No California courts have previously extended section 3288 to general damages for personal injury and the prevailing common law view in other jurisdictions appears to be that prejudgment interest is inappropriate in such cases. . . . We conclude that the better rule disallows prejudgment interest on the nuisance claim. [citations omitted].

*Id.*

The majority opinion in *Greater Westchester* seems to draw a distinction between "general damages," on which no award of prejudgment interest is permitted, and other, more pecuniary, economic damages, sometimes referred to as "special damages." [7] Chief Justice Bird's concurrence points out that,

With respect to the majority's treatment of the prejudgment interest award, it is important to underscore that the award is invalid only to the extent it represents interest on "the intangible noneconomic aspects of mental and emotional injury" claimed by plaintiffs. . . . If plaintiffs allege specific damage that is supported by tangible evidence, pre-judgment interest may properly be awarded under Civil Code section 3288. Clearly, there can be no basis in law or reason for distinguishing between awarding interest on an un-

---

**7.** To the extent that the California Supreme Court was drawing such a distinction, this Court's award of prejudgment interest with regard to lost earnings only on the portion of those earnings that were lost up to the date of the verdict in each case fully comports with the distinction drawn in California law, in personal injury cases, between the "special damages" of

wages lost up to the point of trial (which can usually be proven with reasonable certainty), and the "general damages" of lost earning capacity from the time of trial onward. *See Edwards v. Hollywood Canteen*, 27 Cal.2d 802, 812–13, 167 P.2d 729, 735 (1946); *Swanson v. Bogatin*, 149 Cal.App.2d 755, 758–59, 308 P.2d 918, 920 (1957).

authorized withdrawal from a bank checking account, as this court did in *Bullis v. Security Pac. Nat. Bank* (1978) 21 Cal.3d 801, 814–15, 148 Cal.Rptr. 22, 582 P.2d 109, and awarding interest on a paid medical bill arising out of a defendant's tortious conduct. In both cases, the plaintiff has been deprived of the use of his money and "the accretion of wealth which [the] money . . . could have produced during [the] period of loss."

*Id.* at 108–09, 603 P.2d at 1341, 160 Cal. Rptr. at 744–45.

The *Greater Westchester* Court, therefore, made it clear that the trier of fact, in its discretion, may award prejudgment interest on those portions of the verdict that constitute recovery for paid medical expenses, paid funeral expenses, and lost property. Such interest should run from the date the expenses were paid or the property lost to the date of the verdict in each case. *See Bullis,* 21 Cal.3d at 814–15, 582 P.2d at 117, 148 Cal.Rptr. at 29–30 (upholding award of interest running from date of each unauthorized withdrawal of funds from bank checking account). *Greater Westchester* also makes clear that no award of prejudgment interest may be made, for example, in the personal injury suits brought by surviving passengers on the amounts of the verdicts that represent compensation for pain and suffering.

■ In the wrongful death suits herein, damages were awarded pursuant to section 377 of the California Code of Civil Procedure, which allows "such damages . . . as under all the circumstances of the case, may be just . . . ." Cal.Civ.Proc.Code § 377 (West 1973). Under California law, this wrongful death recovery is limited solely to pecuniary loss. *See In re Riccomi's Estate,* 185 Cal. 458, 461, 197 P. 97, 98 (1921); *Estate of D'India,* 63 Cal.App.3d 942, 947, 134 Cal.Rptr. 165, 167 (1976). No recovery may be had for the grief or sorrow attendant upon the death of a loved one. *See Krouse v. Graham,* 19 Cal.3d 59, 69, 562 P.2d 1022, 1028, 137 Cal.Rptr. 863, 867 (1977). This limitation on recovery to "pecuniary" loss might arguably render all

damages awarded in a wrongful death action free from the objections of *Greater Westchester* to the award of prejudgment interest on the "inherently nonpecuniary" damages for mental and emotional injury. However, closer analysis of the meaning of the term "pecuniary loss" in California wrongful death cases, and of the reasoning of *Greater Westchester,* reveals that the damage awards in these and in most all wrongful death cases include amounts for losses with regard to which the California Supreme Court was concerned that no prejudgment interest be awarded.

Thus, it has been explained that, for purposes of the rule that only pecuniary loss may be recovered in a wrongful death suit,

> *pecuniary* loss may include the loss of such elements as personal companionship or society but only if—and to the extent that—it may reasonably be assessed in *pecuniary* terms under the evidence in the particular case. [emphasis in original].

*Estate of D'India,* 63 Cal.App.3d at 947, 134 Cal.Rptr. at 167. In deciding that a pecuniary loss instruction was both unnecessary and unwise in a wrongful death case, the California Supreme Court pointed to the inconsistencies between the rule and actual practice:

> California case law, however, has not restricted wrongful death recovery only to those elements with an ascertainable economic value, such as loss of household services or earning capacity. On the contrary, as early as 1911, we held that damages could be recovered for the loss of a decedent's "society, comfort and protection" . . . though only the "pecuniary value" of these losses was held to be a proper element of recovery. Other cases have held admissible such evidence as the closeness of the family unit . . . , the warmth of feeling between family members . . . , and the character of the deceased as "kind and attentive" or "kind and loving" . . . . Not only was wrongful death compensation awarded historically to heirs who had been financially dependent upon their deceased relatives,

but adult children received substantial awards for the wrongful death of retired elderly parents . . . and parents received compensatory damages for the death of young children . . . . These cases suggest a realization that if damages truly were limited to "pecuniary" loss, recovery frequently would be barred by the heirs' inability to prove such loss. The services of children, elderly parents, or nonworking spouses often do not result in measurable net income to the family unit, yet unquestionably the death of such a person represents a substantial "injury" to the family for which just compensation should be paid.

*Krouse,* 19 Cal.3d at 68, 562 P.2d at 1025–26, 137 Cal.Rptr. at 866–67. Furthermore, damages for loss of "consortium," which includes not only loss of support or services, but also such elements as love, companionship, affection, society, sexual relations, solace and more, are regularly available in wrongful death suits. *Id.* at 70, 562 P.2d at 1027, 137 Cal.Rptr. at 868.

Therefore, the amount of damages awarded here in wrongful death cases decided under California law properly includes amounts designed to compensate the plaintiffs for loss of the decedents' society, comfort, protection, love, companionship, affection, sexual relations, solace, and the like. No less than the awards for pain and suffering, and emotional distress in *Greater Westchester,* the damages awarded in these cases to compensate for these kinds of losses are "inherently nonpecuniary, unliquidated and not readily subject to precise calculation." *Greater Westchester,* 26 Cal.3d at 103, 603 P.2d at 1338, 160 Cal.Rptr. at 741. Like the damages in *Greater Westchester,* "[t]he amount of such damages is left to the subjective discretion of the trier of fact." *Id.* Because such losses are of a continuing nature, it is also "particularly difficult to determine when any particular increment of intangible loss arose." *Id.* Finally, the factfinder, in assessing such damages, "possesses full authority to consider the duration" of such losses. *Id.* On damages such as these, therefore, no prejudgment interest is allowable.

In summary, in addition to prejudgment interest on those portions of the verdicts that constitute recovery for paid medical expenses, paid funeral expenses, and lost property, prejudgment interest will be awarded in those cases decided under California law on those amounts of the verdicts constituting recovery for loss of earnings, services or support which would have accrued between the date of the accident and the date of the verdict in each case. No prejudgment interest will be awarded on those portions of the verdicts constituting recovery for loss of earnings, services or support that would have, or that will, accrue after the date of the verdict in each case. Prejudgment interest will not be awarded on those portions constituting recovery for pain and suffering, or loss of consortium (in survival cases) nor for loss of a decedent's society and comfort or loss or consortium (in wrongful death cases). In all of these cases, prejudgment interest will run from the date any amount was paid or would have accrued to the date the verdict in each case was rendered.

## IV. NEW JERSEY LAW

New Jersey's law regarding prejudgment interest is considerably simpler than California law on the subject. Section 4:42–11(b) of the New Jersey State Civil Practice Rules provides, in relevant part:

> In tort actions . . . the court shall include in the judgment simple interest at 8% per annum on the amount of the award from the institution of the action or from a date 6 months after the date of the tort, whichever is later, provided that in exceptional cases the court may suspend the running of such prejudgment interest.

Generally, the trial judge has no discretion in the award of prejudgment interest and is required to include such interest in the final judgment. *See Busik v. Levine,* 63 N.J. 351, 307 A.2d 571, *appeal dismissed,* 414 U.S. 1106, 94 S.Ct. 831, 38 L.Ed.2d 733 (1973); *Ford v. Garvin,* 127 N.J.Super. 391, 317 A.2d 425 (App.Div.1974). In this case,

moreover, no "exceptional circumstances," which might justify the suspension of the normal running of interest under New Jersey law, have been presented to the Court nor appear in these cases. Prejudgment interest at the rate of 8% shall, therefore, be awarded in the wrongful death cases in which New Jersey law controls on the total amount of the verdict from the date of institution of the action or from a date 6 months after the date of the aircrash, whichever is later, to the date of rendering of the verdict. *See Weiman v. Ippolito*, 129 N.J.Super. 578, 324 A.2d 582 (App.Div.1974), supp. opinion, 130 N.J.Super. 207, 326 A.2d 70 (App.Div.1974) (affirming award of prejudgment interest on entire amount of the verdict).

## V. FLORIDA LAW

■ In those cases tried under Florida law, no prejudgment interest may be granted. Section 55.03 of the Florida Statutes Annotated sets the rate of prejudgment interest at 6%. The cases interpreting that section have unanimously held that prejudgment interest is not allowed in personal injury cases. *Smith v. Goodpasture*, 189 So.2d 265 (1966); *Parker v. Brinson Construction Co.*, 78 So.2d 873 (1955); *Jackson Grain Co. v. Hoskins*, 75 So.2d 306 (1954). By analogy, no prejudgment interest is allowable in these wrongful death cases.

This conclusion is given further support by Florida Stats.Ann. § 768.21, the survival statute. That section provides, in part, that "each survivor may recover the value of lost support and services from the date of [a] decedent's injury to his death, *with interest.*" [emphasis supplied]. Section 768.21 also allows an award for "future loss of support and service from the date of death," which is reduced to present value, with no mention of interest on such losses as have accrued before trial (which would not be *reduced* to present value).

## VI. ARIZONA LAW

■ Section 12–347 of the Arizona Revised Statutes Annotated governs the award of prejudgment interest in that state. That statute only provides that

[t]he clerk of the court shall include in the judgment entered by him the costs and interest on the verdict from the time it was rendered.

The cases that have interpreted this statute clearly preclude the award of prejudgment interest on the verdicts in the cases rendered herein under Arizona law. *See Komie v. Buehler Corp.*, 449 F.2d 644, 649 (9th Cir. 1971) (applying Arizona law); *Schwartz v. Schwerin*, 85 Ariz. 242, 249–50, 336 P.2d 144, 149 (1959); *Arizona Eastern R. Co. v. Head*, 26 Ariz. 259, 262, 224 P. 1057, 1059 (1924) (quoted with approval in *Arizona Title Insurance and Trust Co. v. O'Malley Lumber Co.*, 14 Ariz.App. 486, 484 P.2d 639 (1971)). Plaintiffs have not argued to the contrary.

Therefore, no prejudgment interest shall be awarded in those cases tried under Arizona law.

## VII. HAWAII LAW

■ Hawaii's law on prejudgment interest was somewhat unclear until 1969. Prior thereto, the pertinent statute was Haw.Rev. Stat. § 478–2, which simply provided:

Interest at the rate of six per cent a year, and no more, shall be allowed on any judgment recovered before any court in the State, in any civil suit.[8]

Under this statute, however, the Hawaii Supreme Court ruled that:

interest is properly given to a plaintiff *from the date of conversion of his property* by a defendant until the date judgment is satisfied. There is no sound reason why a plaintiff should not be able to recover a loss in earnings of an asset which defendant converted. [emphasis supplied].

---

**8.** Although the interest rate was increased to 8%, effective June 9, 1979, because the verdict in the case tried under Hawaiian law was rendered prior to that date, this Court applies the 6% rate to calculate prejudgment interest.

*Lucas v. Liggett & Myers Tobacco Co.*, 51 Haw. 346, 461 P.2d 140, 143 (1969).[9] The reasoning in *Lucas* is quite similar to the reasoning used in California decisions. This similarity suggests that Hawaii law would mirror the California law discussed above were the issues in these cases presented squarely to the Hawaii courts.

In 1979, the Hawaii legislature added Section 636–16 to the Hawaii Revised Statutes. This law now provides:

> In awarding interest in civil cases, the judge is authorized to designate the commencement date to conform with the circumstances in each case, provided that the earliest date in cases arising in tort, may be the date when the injury first occurred and in cases arising by breach of contract, it may be the date when the breach first occurred.

This Court, in following the policy evinced in section 636–16, and cognizant of the general tendency of Hawaii courts to follow California law on previously undecided questions, concludes that prejudgment interest at the rate of 6% per annum, shall be awarded in cases decided under Hawaii law from the date of accrual to the date of the verdict on that amount of the verdict that constitutes recovery for loss of earnings, services or support that would have accrued between the dates of the accident and of the verdict. Such interest shall also be awarded on those portions of the verdict that constitute recovery for paid medical expenses, paid funeral expenses, and lost property, from the date of the expenditure or loss.

## VIII. COMPUTATION OF AMOUNTS OF PREJUDGMENT INTEREST

Computation of the amounts of prejudgment interest awards by the Court after conclusion of all of the trials has necessarily been a difficult venture. In the normal case, the law regarding prejudgment interest would be explained to the jury and the jury would decide how much interest was warranted under the facts of each case. In these cases, pursuant to stipulation of the parties, the Court is performing this fact-finding function.

A brief explanation of the Court's method of computation may be in order. Calculations where interest was based on the entire amount of the verdict from a specified date (*i. e.*, in cases decided under New Jersey law) were relatively simple. The Court multiplied the amount of the verdict times the applicable annual interest rate and multiplied this product by the number of years (using the number of days in a year divided by 365 for partial years) over which interest would accrue. Since none of the states concerned herein allow compounded prejudgment interest, the resulting product represented the correct amount of prejudgment interest.

Under California and Hawaii law, however, the calculations were more complicated. On paid medical expenses, paid funeral expenses, and lost property, the Court followed the above described procedure, measuring the time of accrual of interest by the number of years (and fractional portions thereof) between the date of payment of the expenses or date of loss of the property. Computing the interest on the value of lost earnings, services, and support, however, required a determination of the date from which such amounts would have accrued. The Court made this determination by calculating interest on all such amounts lost during any given time period to run from the middle of that period. In other words, if $20,000 in earnings was lost during a given year, the Court awarded interest on the entire $20,000 from the middle of that year to the date of the verdict. Although this method of proceeding "over-awards" on amounts that would not have accrued until *after* the middle of the year, it, in an identical amount, "under-awards" interest on amounts that would have accrued *before* the middle of the year. Inasmuch as no evidence was presented as to the exact dates on which these amounts would have accrued, selecting the middle date seemed

---

**9.** The *Lucas* court specifically held that the statute's allowance of interest *on judgments* did not preclude awarding interest for the period before the judgment. *Id.*, 461 P.2d at 144.

to result in the closest estimation of the proper total of interest on such amounts.

Factual findings and calculations of pre-judgment interest were made by the Court and filed, and judgments entered, in each case. Some examples of the Court's calculations are set forth below for purposes of demonstration:

In *CV 74–1494* (Decedent: Ernst Muenster) (decided under New Jersey law) (verdict date of Nov. 9, 1978), the complaint in this case was filed May 30, 1974. Under New Jersey law, prejudgment interest runs on the entire verdict from the later of the date of filing of the complaint or six months after commencement of the tort.

Six months being later, interest should run on the entire verdict of $226,500 from July 30, 1974. Prejudgment interest in this case is, therefore,

$$\$226,500 \times .08 \times 4\,\frac{102}{365}\ (\text{years}) = \$77,543.66$$

In *CV 74–606* (Survivor: Dick Smith) (decided under California law) (verdict date of Jan. 25, 1979), a survivor case, there were no lost earnings. The parties stipulated that there were $4,273.83 in paid expenses (of which Mr. Smith had been reimbursed $500 by Pan Am) and $4,287.00 in property loss. Assuming all medical expenses were paid within 60 days of the crash, prejudgment interest on the medical expenses is

$$\$3,773.83 \times .07 \times 4\,\frac{301}{365}\ (\text{years}) = \$1,274.52;\ \text{prejudgment}$$

interest on the property loss is

$$\$4,287.00 \times .07 \times 4\,\frac{361}{365}\ (\text{years}) = \$1,497.16$$

Prejudgment interest in this case is, therefore, $2,771.68.

---

In *CV 76–339* (Decedent: George Cox) (decided under California law) (verdict date of Jan. 18, 1979), the parties stipulated that the funeral expenses were $403.50 and the property lost was $500. Again, assuming that the funeral expenses were paid within sixty days after the crash and computing interest on the lost property from the date of the accident, prejudgment interest on the funeral expenses is

$$\$403.50 \times .07 \times 4\,\frac{294}{365}\ (\text{years}) = \$138.13;$$

prejudgment interest on the lost property is

$$\$500 \times .07 \times 4\,\frac{353}{365}\ (\text{years}) = \$173.85$$

Mr. Cox worked as a supervisor in charge of the ramp and dispatching for Skychefs, an airline food supplier. Based on the testimony of John Mahoney Tippets (co-worker of Cox) and plaintiff's expert, Stuart Neffler, the Court concludes that Mr. Cox would have earned approximately $85,800 prior to trial and would have paid $11,000 in taxes on that amount. Using Cox's salary ($13,570) in 1973 as a base, using a 7½% annual salary growth rate and subtracting taxes the Court finds that Cox's earnings, after taxes, would have been

- In 1974:  $12,568
- In 1975:  $13,676
- In 1976:  $14,866
- In 1977:  $16,746
- In 1978:  $17,522
- In 1979:  $19,001

The Court finds that Mr. Cox would have remained at the position he held at Skychefs until the time of the trial had he not been in the crash. Based on the above salaries, the prejudgment interest on lost earnings in this case comes to:

$$\text{On 1974 salary:}\ \$12,568 \times .07 \times 4\,\frac{172^*}{365} = \$3,933.61$$

$$\text{On 1975 salary:}\ \$13,676 \times .07 \times 3\,\frac{172^*}{365} = \$3,323.08$$

$$\text{On 1976 salary:}\ \$14,866 \times .07 \times 2\,\frac{172^*}{365} = \$2,571.61$$

On 1977 salary: $16,746 \times .07 \times 1\frac{172^*}{365} = 1,724.61$

On 1978 salary: $17,522 \times .07 \times \frac{172^*}{365} = 577.98$

On 1979 salary: $(\$19,001 \times \frac{18}{365}) \times .07 \times \frac{9^*}{365} = 1.62$

\* from middle of each period to date of verdict.

---

Prejudgment interest on earnings is, therefore, $12,132.49. Total prejudgment interest is $12,444.47.

In *CV 74–2915* (Decedent: Wayne B. Evans) (decided under California law) (verdict date of Dec. 20, 1978), the parties stipulated that $869 was paid in funeral expenses and $500 was the property loss. Prejudgment interest on the funeral expenses is

$$\$869 \times .07 \times 4\,\frac{266}{365} \text{ (years)} = \$294.15;$$ prejudgment interest

on the lost property is

$$\$500 \times .07 \times 4\,\frac{325}{365} \text{ (years)} = \$171.16$$

---

Mr. Evans was a senior electronics technician at the Scripps Institute of Oceanography, a branch of the University of California. Mr. Grow, the Laboratory business manager there, testified that, at the time of Mr. Evans' death, Evans was earning $1,036 a month. The salary for his position rose, as follows:

July 1, 1974 to June 30, 1975: $1200/month

July 1, 1975 to June 30, 1976: 1305/month

July 1, 1976 to June 30, 1977: 1375/month

July 1, 1977 to June 30, 1978: 1375/month

July 1, 1978 to Dec. 20, 1978: 1400/month

While at sea, Evans earned time and a half for all work over forty hours per week. The general rule at Scripps was that, during times at sea, an employee earned 14% more than he earned on shore. Evans worked about half of his time at sea. Therefore, approximately the following earnings were lost:

January 31, 1974 to January 30, 1975:
$$(5 \times \$1036 \times \frac{.14}{2}) + (7 \times \$1200 \times \frac{.14}{2}) = \$14,530.60$$

January 31, 1975 to January 30, 1976:
$$(5 \times \$1200 \times \frac{.14}{2}) + (7 \times \$1305 \times \frac{.14}{2}) = \$16,194.45$$

January 31, 1976 to January 30, 1977:
$$(5 \times \$1305 \times \frac{.14}{2}) + (7 \times \$1375 \times \frac{.14}{2}) = \$17,280.50$$

January 31, 1977 to January 30, 1978:
$$(12 \times \$1375 \times \frac{.14}{2}) = \$17,655.00$$

January 31, 1978 to December 20, 1978:
$$(5 \times \$1375 \times \frac{.14}{2}) + (5\frac{20}{31} \times \$1400 \times \frac{.14}{2}) = \$15,812.70$$

Prejudgment interest on these amounts would be January 31, 1974 to January 30, 1975:

$$\$14{,}530.60 \times .07 \times 4 \,\frac{142^*}{365} = \$4{,}464.28$$

January 31, 1975 to January 30, 1976:

$$\$16{,}194.45 \times .07 \times 3 \,\frac{142^*}{365} = \$3{,}841.85$$

January 31, 1976 to January 30, 1977:

$$\$17{,}280.50 \times .07 \times 2 \,\frac{142^*}{365} = \$2{,}889.87$$

January 31, 1977 to January 30, 1978:

$$\$17{,}655.00 \times .07 \times 1 \,\frac{142^*}{365} = \$1{,}283.25$$

January 31, 1978 to December 20, 1978:

$$\$15{,}812.70 \times .07 \times \frac{177^*}{365} = \$\ \ 536.77$$

\* from middle of each period to date of verdict.

These amounts total $13,106.02. Total prejudgment interest is, therefore, $13,481.33.

### IX. POST–JUDGMENT INTEREST

The parties have agreed that, in all these cases, post-judgment interest shall run from the date of the rendering of the verdict in each case. Even were this not the case, the Court would have the inherent power to order the judgments in these cases entered on those dates for this limited purpose, especially considering the unusual nature of the delays in these cases. *See Mitchell v. Overman*, 103 U.S. 62, 64–65, 26 L.Ed. 369 (1881); *Unique Systems, Inc. v. Zotos International, Inc.*, 622 F.2d 373, 380–81 (8th Cir. 1980); *Venable v. Meyers*, 500 F.2d 1215, 1216 (9th Cir. 1974); *Stone v. Currigan*, 138 Colo. 442, 334 P.2d 740, 743 (1959); 6A *Moore's Federal Practice* ¶ 58.08, at 58–301 to 309 (2d ed. 1979).

In those cases decided under California law, such interest during this period is further justified as "prejudgment interest," awardable by the Court on damages certain or capable of being made certain by calculation, under Cal.Civ. Code § 3287(a) (West 1970), from the date upon which the right to recover the damages vested in plaintiffs. (*i. e.*, the date of the verdicts).