[Civ. No. 11706. Third Dist. Oct. 30, 1969.]

ELVETT E. FIELDS, Plaintiff and Appellant, v. ERNEST RILEY, Defendant and Respondent.

## COUNSEL

Steel & Arostegui and Phillip A. Cooke for Plaintiff and Appellant.

Fitzwilliam, Memering, Stumbos & DeMers for Defendant and Respondent.

## OPINION

**JANES, J.**— Plaintiff appeals from an adverse judgment in a wrongful death action tried by jury and from an order denying his motion for new trial.[1] The case arose out of an automobile accident in which Jerry Fields, the 4-year-old son of plaintiff, was killed while riding as a passenger in defendant's car. Defendant admitted liability for the wrongful death of the boy.[2] The trial, therefore, was limited to the issue of damages.

The trial judge having refused to disturb the defense verdict returned by the jury, plaintiff contends (1) that in the face of defendant's admission of liability the verdict must have resulted from passion and prejudice, hence that the trial judge abused his discretion by permitting the verdict to stand and denying plaintiff a new trial, and (2) that since the uncontradicted evidence demonstrates the award is insufficient as a matter of law this court should reverse and permit a new trial on the issue of damages.

### SUMMARY OF THE FACTS

Jerry Fields, the deceased, was the son of plaintiff, Elvett Fields. The boy was born August 9, 1961, and just prior to his death, which occurred on September 21, 1965, Jerry was in good health and was mentally alert and well-mannered.

Plaintiff and Jerry's mother separated in mid-December of 1964, and Jerry's mother filed an action for divorce against plaintiff later in that month. An order for support pendente lite was made and entered on January 18, 1965, and an interlocutory decree of divorce was entered three months later. Prior to the separation Jerry and his father maintained a normal father-son relationship.

In January of 1965 plaintiff left California and traveled through

---

[1]Plaintiff had also moved for and was denied judgment notwithstanding the verdict. The order denying the motion for new trial is not an appealable order, hence the purported appeal therefrom must be dismissed. (Code Civ. Proc., § 904.1, formerly § 963; *Rodriquez* v. *Barnett* (1959) 52 Cal.2d 154, 156 [338 P.2d 907].) The propriety of the trial court's ruling thereon is reviewed, however, on this appeal from the judgment. (*Caviglia* v. *Jarvis* (1955) 135 Cal.App.2d 415, 416 [287 P.2d 525].)

[2]We know and accept the fact that liability was admitted only because we are so informed by the parties' briefs. There is nothing in the record to indicate that any of the issues defined by the pretrial conference order (including defendant's alleged wilful misconduct, intoxication and proximate causation) were to be withdrawn or withheld from the jury.

Tennessee, Illinois and Michigan, doing occasional work, before returning to California in May of the same year. At the time he left California, plaintiff knew that he was obligated by the January court order to pay $125 monthly for the support of Jerry. During the entire period, however, from January 1965, to the boy's death in September, plaintiff contributed only the sum of $62 toward such support; no money was contributed after plaintiff left California in January, nor did he make any payment toward support to Jerry after his return to this state. He contributed nothing toward Jerry's funeral expenses. After returning to California in May, plaintiff visited Jerry intermittently—once at the home of his mother-in-law, Mrs. Miller.

Plaintiff testified, admitting that except for the sum of $62 he had failed to comply with the order for payment of support, but stated that after the separation he made payments in unspecified amounts on some of the community bills, as best he could, and that he had several times bought items of clothing for Jerry. He pointed out that he was unemployed, although drawing unemployment compensation for part of this period; that he made no payment on Jerry's funeral bill because he thought those expenses were covered by insurance.

Plaintiff further testified that he returned to California in May in order to be near Jerry and to attempt reconciliation with Jerry's mother, and that after his return to California he had visited Jerry at two- to three-week intervals during the summer months prior to the accident. Approximately 10 of these visits, he said, were at the home of his mother-in-law, Mrs. Miller. ■ The conflict between plaintiff's testimony in this regard and that of Mrs. Miller—who testified that there was but one such visit—was, of course, for the jury to resolve, along with their determination of his credibility in other particulars. (3 Witkin, Cal. Procedure (1954) Appeal, § 84, pp. 2245, 2246 and cases cited therein.)

Jerry's mother was not present at the trial, and the evidence showed that her own companion suit was compromised and settled by payment to her of the sum of $12,000.

PLAINTIFF'S CONTENTIONS

A. ABUSE OF DISCRETION

Two points are made in support of plaintiff's contention that he is entitled to a reversal and new trial because the verdict resulted from passion, prejudice or corruption on the part of the jury. First, it is suggested that where liability is admitted common sense makes mandatory a verdict for plaintiff, and that the jury must have lost all sense of perspective and reached their result through passion and prejudice. Secondly—and more specifically—it is argued that passion or prejudice "must have entered into the result of this case, deciding against this Negro father, as is plainly apparent in the fact that the verdict was for the defendant."

We will treat the first point in our discussion of plaintiff's parallel contention that the failure to award damages was erroneous as a matter of law. ■ The second point, which raises the issue of racial prejudice, deserves only brief mention. Nowhere in the record—except possibly in photographs of Jerry[3]—is any reference made to the race or color of any of the principals, nor does it appear from the documents filed in support of the motion for a new trial that any such contention was made to the trial judge, to whom the motion for new trial on this basis is particularly addressed. The contention is simply unsupported by the evidence.

### B. FAILURE TO AWARD DAMAGES

■ Plaintiff's contention that the failure to award damages constituted an insufficient award as a matter of law (see, e.g., *Bencich* v. *Market Street Ry. Co.* (1937) 20 Cal.App.2d 518 [67 P.2d 398]) appears to be based upon the premise that an admission of liability equates with the accrual of damages. No authority is cited for the proposition and it is not the law.

The burden of proof is on the plaintiff to prove his damges with reasonable certainty. (*Nelson* v. *Black* (1954) 43 Cal.2d 612, 613-614 [275 P.2d 473]; *Tremeroli* v. *Austin Trailer Equipment Co.* (1951) 102 Cal.App.2d 464, 480 [227 P.2d 923].) The extent of such damage must be proved as a fact. (*Roberts Distributing Co.* v. *Kaye-Halbert Corp.* (1954) 126 Cal.App.2d 664, 674 [272 P.2d 886]; *Gray* v. *Craig* (1932) 127 Cal.App. 374, 378 [15 P.2d 762, 16 P.2d 798], cert. den. 289 U.S. 744 [77 L.Ed. 1491, 53 S.Ct. 688].) It has been held, furthermore, that the burden placed on plaintiff is in no way lessened by his presentation of a prima facie case of negligence against the defendant. (See, *Commercial Union Assur. Co.* v. *Pacific Gas & Elec. Co.* (1934) 220 Cal. 515, 523 [31 P.2d 793].)

■ Damages in a wrongful death action are limited to the pecuniary loss suffered by one because of the death of another. *Syah* v. *Johnson* (1966) 247 Cal.App.2d 534, 546 [55 Cal.Rptr. 741]; *Ure* v. *Maggio Bros. Co.* (1938) 24 Cal.App.2d 490, 491 [75 P.2d 534]; *Ginochio* v. *San Francisco* (1924) 194 Cal. 159, 167 [228 P. 428]; *Bond* v. *United Railroads* (1911) 159 Cal. 270, 277 [113 P.366, Ann.Cas. 1912C 50, 48 L.R.A. N.S. 687]; in general, see, Prosser, Law of Torts (3d ed.) § 121, pp. 927-932.) This limitation, however, does not prevent recovery for loss of a child's comfort and society, and subsequent protection which the child may afford to a parent, provided these elements are considered in reasonable relation to pecuniary loss. (*Tyson* v. *Romey* (1948) 88 Cal.App.2d

---

[3]Plaintiff's exhibits, including the photographs, have not been designated and forwarded to this court. We make the conditional assumption only because the reporter's transcript shows that three photographs of Jerry were placed in evidence by plaintiff and exhibited to the jury.

752, 758 [199 P.2d 721]; see also, *Syah* v. *Johnson, supra,* 247 Cal.App.2d at pp. 546-547.)

In the case at bench the jury apparently concluded that the plaintiff-father suffered no pecuniary loss, nor did he suffer a loss of the child's comfort and society through his death. The latter finding could well have been based on the facts that plaintiff left the state, saw the child but seldom, and did not contribute to his support. The jury may also have considered the evidence received without objection, that the mother's own suit had been settled for a substantial sum.

Upon the facts presented, although the evidence is in part conflicting, the jury could have and undoubtedly did conclude that plaintiff failed to meet his burden of proving damage. (See, *Cossi* v. *Southern Pac. Co.* (1930) 110 Cal.App. 110 [293 P. 663], disapproved on other grounds in *Flores* v. *Brown* (1952) 39 Cal.2d 622, 632 [248 P.2d 922].) In determining upon an award the jury not only "has broad discretion, subject to the usual control where the award is plainly excessive or inadequate, to give such amount 'as under all the circumstances of the case may be just.' (Code Civ. Proc., § 377)" (*Syah* v. *Johnson, supra,* 247 Cal.App.2d at p. 547), but the verdict may not be disturbed on appeal "[u]nless the finding is prejudicially disproportionate to all of the surrounding circumstances. . . ." (*Tyson* v. *Romey, supra,* 88 Cal.App.2d at p. 758) Absent the latter showing, as stated in *Cossi, supra,* at page 112: We must assume on appeal that the jury in arriving at its verdict [there, for $1] determined that the evidence did not establish with reasonable certainty that any pecuniary damages would be suffered by appellant from the death of his son, and that on the motion for new trial the trial court concluded that the evidence was sufficient to support this determination of the jury."

The argument that the award is insufficient as a matter of law appears, therefore, to be a sufficiency of the evidence argument clothed in a slightly different guise. The rules relating to sufficiency of the evidence are well settled and were recently restated by the Supreme Court in *Green Trees Enterprises, Inc.* v. *Palm Springs Alpine Estates, Inc.* (1967) 66 Cal.2d 782, 784, 785, 787 [59 Cal.Rptr. 141, 427 P.2d 805]: "When a finding of fact is attacked on the ground that there is no substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the finding of fact. (Citations.)

"When two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the trial court. (Citations.)

" . . . . . . . . . .

"A trier of fact may accept such witnesses as he wishes and reject

others, and an appellate court may consider only whether there is substantial evidence to support his findings, not whether it feels in the reading of the cold record that it would disagree. (Citations.)"

■ Notwithstanding these accepted rules, plaintiff maintains strenuously that at the very least the facts demonstrate a pecuniary loss for the value of the society and companionship of which he was deprived at the time of Jerry's death and which probably will be lost in the future. (See, *Holder* v. *Key System* (1948) 88 Cal.App.2d 925, 940 [200 P.2d 98].) But as noted in *Parsons* v. *Easton* (1921) 184 Cal. 764, 773-774 [195 P. 419], damages for the deprivation of the society and comfort of a child are not a universal right existing in every case; they are allowable only where circumstances show a reasonable probability that the "society, comfort, and protection" afforded to the surviving parent was of such a character that it would be of pecuniary advantage to the parent, and thus would entail a pecuniary loss to him. (See, also *Ure* v. *Maggio Bros. Co., supra,* 24 Cal.App.2d at pp. 495-496.)

■ Although the court's instructions were not made a part of the record on appeal, defendant points additionally to the fact that the jurors were instructed that they should take into consideration—as an offset against any loss factors—what it would cost plaintiff to maintain and educate the deceased child had he lived. ■ There is authority in such cases for deducting from the loss factors—including the pecuniary loss a parent suffers by being deprived of the comfort, protection and society of a child—the prospective cost to the parent of the child's support and education. (*Fuentes* v. *Tucker* (1947) 31 Cal.2d 1, 9 [187 P.2d 752]; *Hunton* v. *California Portland Cement Co.* (1944) 64 Cal.App.2d 876, 882-883 [149 P.2d 471]; see, 2 Witkin, Summary of Cal. Law (1960) Torts, § 416(1), p. 1618.)

■ Although neither the loss factors nor such offsets are readily measurable in a particular case—nor need they be measured in precise terms of dollars and cents— in the case at bench the jury had before it for consideration a court order subject to mathematical computation which required plaintiff to pay support for his child in the sum of $125 monthly. The jury was entitled and required to take into consideration the prospective cost to plaintiff of the boy's maintenance and rearing, and they may well have offset their reasonable appraisal of such costs, under the general verdict, against any pecuniary loss which they found that plaintiff suffered.

The judgment is affirmed. The appeal from an order denying plaintiff's motion for a new trial is dismissed.

Friedman Acting P.J., and Bray, J.,* concurred.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.