[Civ. No. 38828. First Dist., Div. Four. Nov. 18, 1976.]

Estate of PATRICIA ANN D'INDIA, Deceased.
ANITA ELLIOTT, Petitioner and Appellant, v.
JOHN D'INDIA, Objector and Respondent.

COUNSEL

Nicholas Zoller for Petitioner and Appellant.

Dobbs, Doyle & Nielsen, Eugene W. Doyle and James R. Parrinello for Objector and Respondent.

OPINION

RATTIGAN, J.—Anita Elliott, the mother of Patricia D'India, deceased, appeals from a judgment of the probate court under which she takes nothing upon her petition for an apportionment of damages collected by Patricia's estate in settlement of an action for her (Patricia's) wrongful death.

Patricia died intestate on November 20, 1972, at the age of 26 years. Her only heirs at law were appellant and John D'India, her (Patricia's) husband and the respondent herein. Respondent was duly appointed administrator of Patricia's estate. In March 1973, acting as administrator and on behalf of Patricia's "heirs" pursuant to Code of Civil Procedure section 377,[1] he commenced an action for damages for her wrongful death against certain defendants allegedly responsible therefor.

By order entered in the estate proceedings in July 1974, upon respondent's petition, the probate court approved his execution of a negotiated settlement of the wrongful death action whereby he would receive the gross sum of $25,000 as administrator. The settlement having been executed, appellant filed in the probate court her petition for an "apportionment" to her, as an "heir" of Patricia's and pursuant to section 377 (see fn. 1, *ante*), of the full $25,000.

In a declaration filed with the petition, appellant alleged that by reason of Patricia's death she had suffered a loss of actual "support" which she calculated at $5,700 upon the bases of her age (62) at the time

---

[1]As pertinent to this proceeding, the statute (hereinafter "section 377") provided: "377. When the death of a person not being a minor . . . is caused by the wrongful act or neglect of another, his heirs, and his dependent parents, if any, who are not heirs, or personal representatives on their behalf may maintain an action for damages against the person causing the death . . . *The respective rights of the heirs and dependent parents in any award shall be determined by the court. . . .*" (Italics added.)

of Patricia's death, her life expectancy thereafter (18.9 years), and the alleged fact that Patricia had theretofore been paying her $25 per month for her "support."[2] She further claimed $34,200 as the value of her loss of Patricia's "comfort and society," calculated over the same 18.9 years at the arbitrary rate of $1,500 per year.[3] Her aggregate claim of "losses," in the amount of $39,900, thus accounted for her demand that the entire $25,000 be apportioned to her.[4]

Appellant and several other witnesses testified at a hearing conducted by the probate court upon her petition. The court thereafter signed formal findings and conclusions, adverse to her, as to the losses of both "support" and "comfort and society" she claimed to have incurred by reason of Patricia's death.[5] The judgment which followed ordered that appellant "take nothing by her petition," and that it was thereby "denied."

[2]Although she claimed the stated loss of "support" by reason of Patricia's death, appellant did not seek apportionment as a "dependent parent" within the meaning of section 377. (See fn. 1, *ante.*) It has not been disputed at any point that she is an "heir" of Patricia's, which was established when one-half of Patricia's separate property was distributed to her in the estate proceedings as such. (See Prob. Code, § 223.)

[3]The arbitrary feature of this computation is shown in the actual allegations of appellant's declaration on the subject of her "loss" of Patricia's "comfort and society," which read in full as follows: "The relationship between me and my daughter, the decedent, was a very close one. Since her marriage I saw her once or twice per week. We talked on the telephone almost every day. She visited me at my home—she usually came alone and would stay about an hour unless we had dinner together. The *pecuniary loss* to me of the *comfort and society* of my daughter is inestimable. *My attorney informed me that at $1,500.00 per year for my life expectancy this would amount to $34,200.00.*" (Italics added.)

[4]The amount actually subject to apportionment turned out to be $16,290.03, which represented the net balance of the $25,000 settlement proceeds after the payment of attorneys' fees and costs in the wrongful death action.

[5]The pertinent findings and conclusions were these:
"FINDINGS OF FACT...
"IX. Decedent, PATRICIA ANN D'INDIA, after her marriage and prior to her marriage gave various small sums of money to petitioner ANITA ELLIOTT [appellant] in cash at frequent intervals together with other sums given by decedent's sister. Petitioner maintained no records relating to said payments or gifts.
"X. Prior to and after her marriage, the relationship between petitioner and decedent ... was that of mother and daughter. After her marriage, decedent visited with petitioner frequently and frequently contacted petitioner by telephone. The quality and nature of the contacts were those of a parent and her child but not of such a quality or nature so as to entitle the petitioner to an apportionment of the lump sum settlement received by respondent/administrator for the wrongful death of decedent.
"... CONCLUSIONS OF LAW...
"III. Petitioner ANITA ELLIOTT is not entitled to an apportionment of the lump sum settlement received for the wrongful death of the decedent.
"IV. The petition for apportionment should be denied and accordingly is denied."

Appellant contends that the probate court erred, in denying her any apportionment, (1) because "[t]he evidence established" her loss of financial support which she had been receiving from Patricia in the latter's lifetime and (2) because "[t]he evidence established" that she "sustained a pecuniary loss, including love, affection, . . . [and similar factors] . . ." in consequence of Patricia's death. (The quoted passages are from appellant's opening brief.) These contentions may not be sustained; we affirm the judgment.

### The Loss Of "Comfort And Society"

We consider the second argument first. ■ Under California law, an heir is entitled to recover wrongful death damages for *pecuniary* loss alone. (*Estate of Riccomi* (1921) 185 Cal. 458, 461 [197 P. 97, 14 A.L.R. 509]; *Cross* v. *Pacific Gas & Elec. Co.* (1964) 60 Cal.2d 690, 692 [36 Cal.Rptr. 321, 388 P.2d 353]; *Fields* v. *Riley* (1969) 1 Cal.App.3d 308, 313 [81 Cal.Rptr. 671]; 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 790, pp. 3087-3088.) For purposes of this rule, *pecuniary* loss may include the loss of such elements as personal companionship or society but only if—and to the extent that—it may reasonably be assessed in *pecuniary* terms under the evidence in the particular case. (*Fields* v. *Riley, supra,* at pp. 313-315; *Riley* v. *California Erectors, Inc.* (1973) 36 Cal.App.3d 29, 32 [111 Cal.Rptr. 459, 69 A.L.R.3d 1033]; *Mize* v. *Atchison, T. & S. F. Ry. Co.* (1975) 46 Cal.App.3d 436, 453 [120 Cal.Rptr. 787].)

The Supreme Court of the United States obliquely referred to this limitation in *Sea-Land Services, Inc.* v. *Gaudet* (1974) 414 U.S. 573 [39 L.Ed.2d 9, 94 S.Ct. 1582], where it cited California law as permitting "recovery for the pecuniary value of the decedent's society." (*Id.,* at p. 587, fn. 21 [39 L.Ed.2d at pp. 22-23].) The *Sea-Land* court went on to hold that "loss of society" was compensable *as such* in the federal wrongful death action before it (*id.,* at pp. 585-590 [39 L.Ed.2d at pp. 21-24]) and that the term included the loss of "love, affection, care, attention, companionship, comfort, and protection" (*id.,* at p. 585 [39 L.Ed.2d at pp. 21-22]): i.e., that "loss of society" was compensable in the federal action without the *pecuniary* aspects thereof which California law requires.

The latter interpretation of the *Sea-Land* holding materialized in a subsequent federal decision which involved multiple wrongful death

actions in an international and interstate context. (*In re Paris Air Crash of March 3, 1974* (C.D.Cal. 1975) 399 F.Supp. 732.) The court there held that the California law of damages applied (*id.,* at pp. 742, 743) and that the court would "adopt the liberalization over California's interpretations of the phrase 'pecuniary loss' as laid down by the Supreme Court in *Sea-Land Services* v. *Gaudet . . . [supra] . . . .*" (*In re Paris Air Crash, supra,* at p. 747.)

Appellant urges that this court "adopt" the liberalized *Sea-Land-Paris Air Crash* rule, which would mean that she could claim a right to apportionment, for the "loss of comfort and society" which she suffered in fact, without the necessity of showing the *pecuniary* values thereof which California law requires. But the *Sea-Land* decision is limited to the wrongful death action it actually involved, which was brought under specific federal maritime law. (*Sea-Land Services, Inc.* v. *Gaudet, supra,* 414 U.S. 573 at p. 574 [39 L.Ed.2d at p. 15].) The *Paris Air Crash* court did not disparage the "pecuniary" limitation of wrongful death damages under California law, but applied the more liberal *Sea-Land* definition of "loss of society" because of the national interest of the United States (*In re Paris Air Crash, supra,* 399 F.Supp. 732 at pp. 745-747) presented in an array of consolidated wrongful death actions which had infinite multinational and multistate ramifications. (See *id.,* at pp. 735-736, 741-742.)

Both decisions are thus limited in their reach, and federal decisions are in no event controlling in matters of state law. (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 674, pp. 4587-4588.) █ To establish a right to apportionment based upon the "loss of comfort and society" she alleged, appellant therefore bore the burden of showing the *pecuniary* aspects of that loss which the California law of wrongful death damages requires. (*Fields* v. *Riley, supra,* 1 Cal.App.3d 308 at p. 313.)

The conflicting evidence on this subject, as received at the hearing upon appellant's petition, involved only her and respondent's differing assessments of the closeness, and the endearing quality, of the relationship between her and Patricia. Whatever the reciprocal closeness of that relationship might have been, she presented no evidence which supported a *pecuniary* evaluation of her "loss" of Patricia's "comfort and society" beyond the purely arbitrary evaluation she had placed upon it in her declaration. (See fn. 3, *ante.*) Fairly interpreted, the trial court's pertinent finding stated this. (See finding "X." as quoted in fn. 5, *ante.*)

The finding means that appellant did not sustain her burden of showing a measurably *pecuniary* "loss of comfort and society" which California law requires (*Fields* v. *Riley, supra,* 1 Cal.App.3d 308 at pp. 313-315), and there is no occasion to disturb the finding on appeal.

### The Loss Of "Support"

Appellant's contention as to what "[t]he evidence established" in her favor, upon this issue, translates into the arguments that she incurred a "loss of support" by reason of Patricia's death *as a matter of law* or, at least, that the evidence is insufficient to support the trial court's determination to the contrary. The arguments require a review of the evidence received at the hearing, which established the following facts without substantial dispute:

Patricia had been the youngest of appellant's three daughters. The other two were "Eleanor" and Barbara Benjamin. Patricia married respondent in 1967. Except for a 10-month period during which they had separated in 1970 and 1971, they had lived as husband and wife, in Daly City, until Patricia died in 1972. She was continuously employed throughout the marriage, and was receiving a net salary of $120 per week at the time of her death. Respondent was an art student during most of the marriage, but was intermittently employed as a part-time teamster.

During the five-year period of Patricia's marriage, appellant variously lived with her (appellant's) brother in Escalon, at her own home and with Barbara in San Francisco, and at Eleanor's home in San Rafael. Both Barbara and Eleanor were married and raising families during this period. Appellant's regular income consisted of monthly Social Security payments and a small pension ($58 per month) which she received as her late husband's widow.

The evidence was in marked conflict as to the fact or amount of "support," if any, appellant had received from Patricia prior to the latter's death. Appellant testified that Patricia had regularly given her "$25 a month" throughout Patricia's marriage; that the payments were always made in cash; and that appellant had kept no record of them. Mrs. Niedomys, her friend, testified that she had seen Patricia give money to appellant on several occasions in Escalon, where the witness had lived since 1971.

Respondent testified that he had never seen Patricia give money to appellant; that he was never aware that she had done this; and that no such expenditures appeared to have been made from Patricia's income, most of which was deposited in bank accounts within his personal knowledge. He further testified that he had always been with Patricia on the very few occasions when she had been in the presence of Mrs. Niedomys in Escalon.

■ The evidence having been in conflict as indicated, it is obvious that appellant did not establish *as a matter of law* that she had suffered a pecuniary loss of "support" in consequence of Patricia's death. Her alternative argument, as to the sufficiency of the evidence to support the trial court's determination that she had incurred no such loss in point of fact, is subject to familiar rules which control appellate review and which appellant has ignored:

When a finding of fact is challenged upon the ground that the evidence is insufficient to sustain it, the power of an appellate court begins and ends with the determination whether there is *any* substantial evidence, contradicted or not, which supports the finding. (*Foreman & Clark Corp.* v. *Fallon* (1971) 3 Cal.3d 875, 881 [92 Cal.Rptr. 162, 479 P.2d 362]; 6 Witkin, Cal. Procedure, *op. cit. supra,* Appeal, § 245, pp. 4236-4238. For the measure of "substantial evidence" which will have this effect, see 6 Witkin, *loc. cit.,* § 248, p. 4240.)

■ Appellant having attacked the trial court's pertinent findings upon this basis, she is required to set forth in her briefs *all* the material evidence on the subject and not merely her own evidence. Unless this is done (and appellant has clearly not done it here), the error claimed must be deemed waived. (*Foreman & Clark Corp.* v. *Fallon, supra,* 3 Cal.3d 875 at p. 881.) ■ All issues of witness credibility are within the exclusive province of the trier of fact. (*Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920, 925 [101 Cal.Rptr. 568, 496 P.2d 480]. See 6 Witkin, Cal. Procedure, *op. cit. supra,* Appeal, § 246, pp. 4238-4239.)

These rules are to be applied to the trial court's actual finding or findings adverse to appellant on the "loss of support" issue. Its finding No. "IX." (quoted in fn. 5, *ante*) does not squarely meet the issue because it refers to Patricia's frequent payments of "small sums of money" to appellant without explicitly stating that they did not constitute "support." Appellant had proposed a finding that the payments *were*

"support." An expressly negative finding would have been more to the point, we may not infer it because of appellant's explicit request for an affirmative finding (Code Civ. Proc., § 634), and the issue of "support" was highly material. ■ We nevertheless perceive no reversible error, for failure to find on a material issue (see 4 Witkin, Cal. Procedure, *op. cit. supra*, Trial, § 337, pp. 3139-3140), for the following reasons:

Appellant has not expressly claimed reversible error upon that ground. (See 6 Witkin, Cal. Procedure, *op. cit. supra*, Appeal, § 425, p. 4391.) Additionally, and irrespective of the shortcomings of finding IX., the trial court stated as a conclusion of law (No. III) that appellant was "not entitled to apportionment of the lump sum settlement . . . ." (See fn. 5, *ante.*) We may treat this statement as a finding of ultimate fact despite its designation as a conclusion of law. (4 Witkin, *op. cit. supra*, Trial, § 323, par. (1), p. 3127.) In light of its omnibus language, it includes a finding of the ultimate fact that appellant was "not entitled to apportionment" because the payments of money she had received from Patricia did not constitute "support." The omnibus finding having been sufficient to support the judgment in this respect, the court's failure to have been more specific in finding No. X does not constitute prejudicial error. (4 Witkin, Cal. Procedure, *op. cit. supra*, Trial, § 343, pp. 3144-3145.)

Whether we identify the decisive finding in the omnibus statement, or in a very liberal interpretation of finding No. IX, or in both, it is adverse to petitioner on the issue of pecuniary "loss of support." ■ In either event, it is to be sustained on appeal because substantial evidence supports it. (*Foreman & Clark Corp.* v. *Fallon, supra*, 3 Cal.3d 875 at p. 881; *Nestle* v. *City of Santa Monica, supra*, 6 Cal.3d 920 at p. 925.)

The judgment is affirmed.

Caldecott, P. J., and Christian, J., concurred.