[Civ. No. 23779. Fourth Dist., Div. Two. May 28, 1982.]

JULIUS S. AUSTERO et al., Plaintiffs and Respondents, v.
WASHINGTON NATIONAL INSURANCE COMPANY,
Defendant and Appellant.

COUNSEL

Rutan & Tucker, Garvin L. Shallenberger, Ira G. Rivin and Patricia L. Stearns for Defendant and Appellant.

Herbert Hafif and Wayne J. Austero for Plaintiffs and Respondents.

OPINION

KAUFMAN, J.—Defendant appeals from a judgment, after retrial, awarding compensatory and punitive damages against it for bad faith failure to pay plaintiffs' claims under two insurance policies.[1] Defendant does not challenge the damages awarded to compensate plaintiffs for the benefits they should have received under the policies (approximately $24,678), but do claim error in the award of $25,000 to plaintiff Dorothy Austero for emotional distress, $200,000 for attorney's fees, and $200,000 as punitive damages. The award for emotional distress is not supported by substantial evidence; the attorney's fee award is legally erroneous. We shall modify the judgment by striking those two portions and, otherwise, affirm the judgment as modified.

FACTS[2]

The dispute involves two insurance policies issued by defendant. One was an occupational total disability policy which was issued to plaintiff Julius Austero in 1958 and lapsed on March 15, 1973 for nonpayment of premiums. The other was a major medical expense policy which was issued to Julius Austero insuring him and his wife, Dorothy Austero, effective May 15, 1973.

Julius Austero's initial notice of claim under the medical policy was made on October 4, 1973, and his first application under the disability

---

[1]The first trial of this matter also resulted in a judgment for the plaintiffs. We reversed, however, because the jury was erroneously instructed on an insurer's duty of good faith and fair dealing. (*Austero* v. *Washington National Insurance Co.* (Jan. 19, 1979; mod. Feb. 9, 1979) 4 Civ. 17649 [unpub. opn.].)

[2]Our statement of facts here is taken from our opinion deciding the appeal after the first trial of this action. (See fn. 1.) As the parties apparently agree, the evidence presented at the retrial was substantially the same as was presented at the first trial.

Only a brief summary of the facts is presented at this point. When relevant, more detailed discussions of the evidence will be integrated into those sections of the opinion which discuss the parties' legal contentions.

policy was made on June 3, 1974. Defendant denied coverage under the medical policy for alleged misrepresentations regarding medical history contained in the application for the medical policy. The claim under the disability policy was denied on the ground that the policy had lapsed prior to Julius Austero's total disability.

## ATTORNEY'S FEES

■ Defendant challenges the award of $200,000 for attorney's fees on numerous grounds. It is contended that the recovery of attorney's fees is not permitted by law in this case, and that, even if fees are recoverable, the award was excessive as a matter of law;[3] there was no substantial evidence to support the award; and the jury was improperly instructed on the issue. The first contention is meritorious and dispositive of the issue. Accordingly we do not reach the other contentions.

The trial court instructed the jury in pertinent part: "[I]f you find that the plaintiffs are entitled to policy benefits under either one of these policies and, further, if you find that it was necessary for plaintiffs to employ the services of an attorney in order to collect the benefits due them under these policies, you shall then award plaintiffs such sums as you find reasonably [*sic*] to compensate them for attorneys' fees, reasonably required[4] to secure the policy benefits. The plaintiffs, however, are not entitled to attorney's fees that may have been incurred in the recovery of damages, if any, attributable to emotional distress, punitive damages, or any other damages that you find were incurred . . . ."

The instruction erroneously permitted plaintiffs to recover attorney fees on account of their attorneys' services in initiating and prosecuting this very action. "The Legislature has established that in the absence of an express agreement or statute, each party to a lawsuit is responsible for its own attorney's fees. (Code Civ. Proc., § 1021;[4] e.g., *LeFave* v. *Dimond* (1956) 46 Cal.2d 868, 870 [299 P.2d 858, 60 A.L.R.2d 939].) In the present case, there is neither an express contract between the

---

[3]The court's instructions authorized the recovery of fees only for services performed to obtain the benefits due under the policy, some $24,678.

[4]Defendant contends that the instruction was also erroneous in failing to indicate that an obligation on the part of plaintiffs to pay attorney fees is a prerequisite to their recovery of attorney fees.

"[4]Code of Civil Procedure section 1021: 'Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties; but parties to actions or proceedings are entitled to costs and disbursements, as hereinafter provided.'"

parties [providing for the recovery of attorney's fees] nor any statute authorizing an award of attorney's fees." (*Davis* v. *Air Technical Industries, Inc.* (1978) 22 Cal.3d 1, 5 [148 Cal.Rptr. 419, 582 P.2d 1010]; accord: *International Industries, Inc.* v. *Olen* (1978) 21 Cal.3d 218, 221 [145 Cal.Rptr. 691, 577, P.2d 10317]; *Viner* v. *Untrecht* (1945) 26 Cal.2d 261, 272 [158 P.2d 3]; *Pederson* v. *Kennedy* (1982) 128 Cal.App.3d 976, 979 [180 Cal.Rptr. 740]; *Canal-Randolph Anaheim, Inc.* v. *Wilkoski* (1978) 78 Cal.App.3d 477, 485 [144 Cal.Rptr. 474].)

"There are a limited number of exceptions to the general rule precluding recovery of fees, in addition to the two exceptions set forth in Code of Civil Procedure section 1021 [contract or statutory authority]. Three exceptions, labeled as the 'Common Fund Theory,' the 'Substantial Benefit Theory,' and the '"private attorney general" theory,' are discussed in *Serrano* v. *Priest* (*Serrano III*) (1977) 20 Cal.3d 25, 35-48 [141 Cal.Rptr. 315, 569 P.2d 1303]. None is applicable to this case." (*Pederson* v. *Kennedy, supra*, 128 Cal.App.3d at p. 979.)

There is another situation, sometimes referred to as the "third party tort exception," in which recovery of attorney fees expended in litigation with a third person is permitted but it likewise is wholly inapplicable to this case. Perhaps the best statement of the "third party tort" rule is found in subsection (2) of section 914 of the Restatement Second of Torts: "One who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover reasonable compensation for . . . attorney fees and other expenditures thereby suffered or incurred in the earlier action." (Accord: *Prentice* v. *North Amer. Title Guar. Corp.* (1963) 59 Cal.2d 618, 620 [30 Cal.Rptr. 821, 381 P.2d 645]; *Glendale Fed. Sav. & Loan Assn.* v. *Marina View Heights Dev. Co.* (1977) 66 Cal.App.3d 101, 149 [135 Cal.Rptr. 802]; see *Pederson* v. *Kennedy, supra*, 128 Cal.App.3d at pp. 979-980.) However, the so-called "third party tort exception" to the general rule is not really an exception at all. The theory of recovery is that the attorney fees incurred in litigating with the third person are recoverable as damages, like any other damages, in the action against the wrongdoer. (See *Prentice* v. *North Amer. Title Guar. Corp., supra*, 59 Cal.2d at pp. 620-621; *Pederson* v. *Kennedy, supra*, 128 Cal.App.3d 976; *Glendale Fed. Sav. & Loan Assn.* v. *Marina View Heights Dev. Co., supra* 66 Cal.App.3d 101.) In such cases there is no recovery of attorney fees qua attorney fees.

Illustrative of the distinction and bearing rather directly on the problem at hand are the numerous cases disallowing the recovery of attorney fees for the prosecution of an action by an insured against the insurer for damages for the insurer's wrongful failure to defend the insured against a claim of liability as provided in the policy. While the attorney fees incurred by the insured in defending the earlier action are recoverable as damages in the subsequent action by the insured against the insurer, attorney fees incurred by the insured in prosecuting the action against the insurer are not recoverable. As the court stated in *Lowell* v. *Maryland Casualty Co.* (1966) 65 Cal.2d 298, 302 [54 Cal. Rptr. 116, 419 P.2d 180]: "[W]e find no merit in plaintiff's claim for recovery of attorney's fees incurred in the instant suit. Although, as we have explained, plaintiff is entitled to reimbursement for his attorney's fees, costs and expenses sustained in the [earlier] action, the expenditures for vindication of that right must be borne by plaintiff. We see no more reason for allowing plaintiff to recover attorney's fees in this case than in actions for enforcement of other kinds of rights." (Accord: e.g., *Patterson* v. *Insurance Co. of North America* (1970) 6 Cal.App.3d 310, 317-318 [85 Cal.Rptr. 665]; *Carroll* v. *Hanover Insurance Co.* (1968) 266 Cal.App.2d 47, 50-51 [71 Cal.Rptr. 868], and cases there cited; cf. *Jarchow* v. *Transamerica Title Ins. Co.* (1975) 48 Cal.App.3d 917, 938, 951 [122 Cal.Rptr.470].)

Indeed, it was that line of cases upon which the court relied in *Twentieth Century-Fox Film Corp.* v. *Harbor Ins. Co.* (1978) 85 Cal.App.3d 105, 114-115 [149 Cal.Rptr. 313], a third party bad faith case, in holding that although the insurer was liable for a judgment in excess of its policy limits, an award of $45,000 on account of plaintiff's attorney fees in prosecuting the bad faith action was improper. Said the court: "If the attorneys' fees incurred in remedying a breach of the basic obligation of indemnity in an insurance policy are not recoverable, then, by analogy, those incurred in a separate action of the insured against the insurer to recover damages for the breach of the implied covenant of good faith and fair dealing should not be." (*Id.*, at pp. 114-115.) The logic is irrefutable; the conclusion is inescapable.

Plaintiffs, of course, rely on *Mustachio* v. *Ohio Farmers Ins. Co.* (1975) 44 Cal.App.3d 358 [118 Cal.Rptr. 581], and *Dinkins* v. *American National Ins. Co.* (1979) 92 Cal.App.3d 222 [154 Cal.Rptr. 775], and several federal court decisions based theron. It must be conceded that *Mustachio* and *Dinkins* tend to support the propriety of a recovery of attorney fees in a bad faith action for that portion of the plaintiff's

attorney's services necessary to recover the benefits due under the policy but not for those services directed toward recovery of damages for emotional distress or punitive damages. To the extent they do so, however, they were respectively misapplied and incorrectly decided on the attorney's fee issue.

In "providing guidance" to the court on retrial, the *Dinkins* court concluded that, if successful, the plaintiff could recover attorney fees for the services of his attorney in recovering for the fire loss as opposed to punitive damages or damages for emotional distress. However, the *Dinkins* decision was based entirely upon *Mustachio* without independent analysis. It is therefore unnecessary to discuss *Dinkins* separately from *Mustachio* except to say that it was wrong in concluding that *Mustachio* stood for the proposition that in an action by the insured against the insurer for bad faith refusal to pay amounts due under the policy, the insured may recover attorney fees incurred in the prosecution of the bad faith action. What *Mustachio* actually held was that an insured who is required to engage an attorney to obtain payment of policy benefits by negotiated settlement may thereafter sue the insurer for the attorney fees he incurred in respect to the negotiated settlement. (44 Cal.App.3d at pp. 361-364; see *Twentieth Century-Fox Film Corp. v. Harbor Ins. Co., supra*, 85 Cal.App.3d at p. 113.) The *Mustachio* court was at pains to note: "There is no contention that defendants are liable for attorney's fees *incurred in this action*." (44 Cal.App.3d at p. 362, fn. 4; italics added.)

Nevertheless, although *Mustachio* was not there and is not controlling here, it must be conceded that, logically, if the insured may recover attorney fees incurred in negotiating a settlement on a claim of bad faith, it would appear to follow that the insured should also be entitled to recover attorney fees incurred in the prosecution of a bad faith action to secure benefits due under the policy. The only problem with that conclusion is that it is completely contrary to Code of Civil Procedure section 1021 and the myriad decisions holding that attorney fees for the prosecution or defense of an action are not recoverable in the absence of an agreement for the recovery of attorney fees or a statute authorizing the recovery of attorney fees, not to mention the decisions specifically applying that rule to suits by the insured against the insurer for the insurer's wrongful failure to provide policy benefits.

How then is the dilemma to be resolved? The court in the *Twentieth Century-Fox* decision distinguished *Mustachio* on its facts. (85 Cal.

App.3d at p. 113.) While *Mustachio* may be factually distinguishable, its reasoning, if sound, would appear to lead to the result reached in *Dinkins* and we think it necessary to explain that under the statutory and case law of this state the reasoning of *Mustachio* cannot and should not be extended to permit the recovery of attorney fees in two-party litigation.

The reasoning of the court in *Mustachio* involved two steps. First the court quoted and relied on the statement of this court in *Fletcher* v. *Western National Life Ins. Co.* (1970) 10 Cal.App.3d 376, 401-402 [89 Cal.Rptr. 78, 47 A.L.R.3d 286], that "'such conduct on the part of a[n] . . . insurer constitutes a tortious interference with a protected property interest of its insured for which damages may be recovered to compensate *for all detriment proximately resulting therefrom*, including economic loss as well as emotional distress resulting from the conduct or from the economic losses caused by the conduct, and, in a proper case, punitive damages.'" (44 Cal.App.3d at p. 363; italics in the orig.) The court stated: "If the insurer, instead of bargaining with the insured in good faith, tortiously violates its covenant of good faith and fair dealing and thereby makes it reasonable for the insured to seek the protection of counsel, plain justice demands that the insurer be financially responsible for an expense which but for its tortious conduct would not have been incurred. Further, we must assume that when the court in *Fletcher, supra*, spoke of 'all detriment' it meant what it said." (44 Cal.App.3d at p. 364, fns. omitted.)

Indeed, we meant what we said in *Fletcher*. The trouble is we were not addressing the recovery of attorney fees in a bad faith action for prosecution of that very action; if we had been we would have been bound by Code of Civil Procedure section 1021 and the many cases applying it, only a few of which are cited above. (See *Jarchow* v. *Transamerica Title Ins. Co., supra*, 48 Cal.App.3d at p. 951.)

Another problem is that the language we used, "all detriment proximately resulting therefrom" was taken almost verbatim from Civil Code section 3333 which prescribes the general tort measure of damages: "For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this Code, is the amount which will compensate *for all the detriment proximately caused thereby* . . . ." (Italics added.) And, of course, the decisions have uniformly disallowed the recovery of attorney fees pursuant to Code of Civil Procedure section 1021 in all kinds of tort actions notwithstanding

the "all the detriment proximately caused" language of Civil Code section 3333. (See, e.g., *Pederson* v. *Kennedy, supra*, 128 Cal.App.3d at p. 979; cf. *Viner* v. *Untrecht, supra*, 26 Cal.2d at p. 272.)

Finally, although we cannot quarrel with the sentiment expressed, the court's statement in *Mustachio* that "plain justice demands that the insurer be financially responsible for an expense which but for its tortious conduct would not have been incurred" proves too much when applied to the recovery of attorney fees in two-party litigation. In virtually all tort actions and contract actions as well, it is the conduct of the wrongdoer that has required the injured party to retain an attorney to prosecute the action for recompense, frequently in contract actions and sometimes in fraud actions to obtain the very thing promised. As the Supreme Court in *Davis* v. *Air Technical Industries, Inc., supra*, 22 Cal.3d at page 7, observed in respect to the so-called "third party tort exception" (also known as the *Prentice* exception): "If applied so broadly, the judicial exception would eventually swallow the legislative rule that each party must pay for its own attorney." (Fn. omitted.) If the logic of *Mustachio* is applied to two-party litigation it will "swallow the legislative rule" not eventually, but right now.

The second step in the reasoning of the court in *Mustachio* was also faulty. It invoked in support of its holding the special relationship between an insurer and its insured and the special nature of an insurance contract pointed out in *Crisci* v. *Security Ins. Co.* (1967) 66 Cal.2d 425, 434 [58 Cal.Rptr. 13, 426 P.2d 173], to which we also adverted in *Fletcher* (10 Cal.App.3d at pp. 403-404) and *Jarchow* (48 Cal.App.3d at p. 940). To be sure, those special features exist but they do not take a bad faith case outside the provisions of Code of Civil Procedure section 1021, nor are they any more compelling than the myriad tort cases in which recovery of attorney fees is uniformly denied, including cases of fraud (see, e.g., *Glendale Fed. Sav. & Loan Assn.* v. *Marina View Heights Dev. Co., supra*, 66 Cal.App.3d at p. 149; *Bezaire* v. *Fidelity & Deposit Co.* (1970) 12 Cal.App.3d 888, 892 [91 Cal.Rptr. 142]; *Heffernan* v. *Bennett & Armour* (1952) 110 Cal.App.2d 564, 588 [243 P.2d 846]), and even fraud by a fiduciary (see, e.g., *Pederson* v. *Kennedy, supra*, 128 Cal.App.3d at pp. 977, 979-980).

Finally, this court in effect passed on the issue in *Jarchow* v. *Transamerica Title Ins. Co., supra*, 48 Cal.App.3d at Page 951, when we denied a request for attorney's fees on appeal because there was no provision in the insurance contract for the recovery of attorney fees.

There is no valid reason for not applying the legislatively prescribed rule (Code Civ. Proc., § 1021) in this action as it applies in all other actions. Litigants are entitled to equal application of laws at the hands of courts no less than the Legislature.

## EMOTIONAL DISTRESS

The jury awarded Dorothy Austero $25,000 for emotional distress. It expressly awarded zero dollars for each of the following: "[c]osts of replacement medical coverage," attorney's fees, and punitive damages. Defendant claims that there was no substantial evidence presented to support the award of damages for emotional distress. We agree.

Of course, any substantial evidence in support of the jury's conclusion is sufficient to affirm the award. (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 245, pp. 4236-4238.) However, here there is a complete absence of evidence that Dorothy Austero suffered any emotional distress. She did not even testify at the trial. Plaintiffs' only argument in support of the award is that it can "be inferred from the evidence [of defendant's tortious conduct] that a person in Mrs. Austero's shoes would suffer emotional distress." Even assuming such an inference might reasonably be drawn, however, it would not be sufficient to show that Dorothy Austero *actually* suffered emotional distress. Plaintiff had the burden of proving her damages with reasonable certainty and this burden was not lessened by showing defendant's bad faith. (See *Fields v. Riley* (1969) 1 Cal.App.3d 308, 313 [81 Cal.Rptr. 671]; *Chaparkas v. Webb* (1960) 178 Cal.App.2d 257, 259 [2 Cal.Rptr. 879].) In *Merlo v. Standard Life & Acc. Ins. Co.* (1976) 59 Cal.App.3d 5, 16 [130 Cal.Rptr. 416], this court found a jury instruction on emotional distress in a bad faith action to be incorrect, "It draws a distinction between actual damage and emotional distress and seemingly informs the jury that while actual damage must be proved, emotional distress need not be. On the contrary, emotional distress is a form of actual damage and must be proved as any other actual damage." Plaintiff having failed to carry her burden of proof, the award of damages for emotional distress cannot stand.

## PUNITIVE DAMAGES

The jury awarded $200,000 to Julius Austero as punitive damages. Defendant challenges this, claiming that there is no support in the evidence for this award. Not so.

In two bad faith insurance cases, the Supreme Court stated the applicable rules for punitive damages, "In order to justify an award of exemplary damages, the defendant must be guilty of oppression, fraud or malice. (Civ. Code, § 3294.) He must act with the intent to vex, injure or annoy, or with a conscious disregard of the plaintiff's rights." (*Silberg* v. *California Life Ins. Co.* (1974) 11 Cal.3d 452, 462 [113 Cal.Rptr. 711, 521 P.2d 1103]; accord: *Neal* v. *Farmers Ins. Exchange* (1978) 21 Cal.3d 910, 922 [148 Cal.Rptr. 389, 582 P.2d 980]; see also *Miller* v. *Elite Ins. Co.* (1980) 100 Cal.App.3d 739, 758 [161 Cal.Rptr. 322].) That the insurer breached its duty to deal fairly and in good faith "does not in itself establish that defendant acted with the quality of intent that is requisite to an award of punitive damages. For this we must look further—beyond the matter of reasonable response to that of motive and intent." (*Neal* v. *Farmers Ins. Exchange, supra*, 21 Cal.3d at p. 922.) It is not necessary, however, that defendant's motivation and intent be proved by direct evidence; it is sufficient that there is indirect evidence from which the jury may draw inferences. (*Id.*, at p. 923, fn. 6.)

Viewing the evidence in the light most favorable to the judgment, there is more than enough evidence in the present case to support the jury's award of punitive damages. There was less than a month between the time when Julius Austero's disability policy lapsed and the time when he applied for major medical coverage in 1973. Yet, Austero's claim under the disability policy was refused on the ground that he was not disabled before the policy lapsed and his claim under the medical policy was refused on the ground that he did not disclose his disability, mental incompetency due to a slow progressing presenile dementia, on his application for the medical policy. Defendant therefore took the inconsistent position that Austero was not disabled for purposes of the disability policy, but was disabled for purposes of determining the accuracy of his medical policy application. Moreover, facts about the long-term nature of Austero's mental incompetency had come to defendant's attention before claims were made under either policy when Austero was examined, soon after he applied for the medical policy, as part of his application for a life insurance policy with defendant. Evidence of defendant's awareness that it was dealing in bad faith with Austero was provided by numerous interoffice memos. For example, one written by defendant's claims examiner shortly after the claims were filed stated, "We issued the health policy on the basis of a 'clean' app[lication]. We developed [a] medical history which indicated that the insured had a problem going back to at least [May, 1972]. Dr.

Barth saw him in [May, 1972], and advised hospital confinement in [July, 1972].... [¶] It appears that there might be a problem if someone can establish a relationship between the life app[lication] and the app[lication] for the Major Medical policy." This evidence supports the jury's finding that defendant acted in conscious disregard of the insured's rights.

## DISPOSITION

The judgment is modified by striking therefrom the award of $25,000 for emotional distress and the award of $200,000 for attorney's fees. As thus modified the judgment is affirmed. The parties shall bear their own respective costs on appeal.

McDaniel, J., concurred.

**MORRIS, P. J.,** Concurring and Dissenting.—I agree with the majority that there is substantial evidence to support the award of punitive damages and that the damages awarded for emotional distress should be stricken. However, I respectfully dissent from that portion of the majority opinion which strikes the damages awarded for attorney's fees. Ignoring one statute and misapplying another, the majority frustrates the very purpose of tort law—compensation.

The pertinent rule on the issue of attorney's fees in this case is that, "[f]or the breach of an obligation not arising from contract, the measure of damages, ... is the amount which will compensate for all the detriment proximately caused thereby, ..." (Civ. Code, § 3333.) The attorney's fees incurred by plaintiffs in recovering the benefits due under the insurance policies was "detriment proximately caused" by defendant's tortious conduct and plaintiffs should be compensated for those attorney's fees. The general rule of section 1021 of the Code of Civil Procedure, that attorney's fees are not recoverable absent statutory authorization or agreement between the parties, does not require a contrary conclusion. Like the insurance company in *Mustachio* v. *Ohio Farmers Ins. Co.* (1975) 44 Cal.App.3d 358 [118 Cal.Rptr. 581], the majority's "reliance on the general rule misinterprets the nature of this action." (*Id.,* at p. 363.)

It is well settled that if an insurer, in discharging its contractual responsibilities, "fails to deal *fairly and in good faith* with its insured by refusing, without proper cause, to compensate its insured for a loss cov-

ered by the policy, such conduct may give rise to a cause of action in tort for breach of an implied covenant of good faith and fair dealing." (*Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566, 574 [108 Cal.Rptr. 480, 510 P.2d 1032], original italics.) When such a breach occurs, the insurer is "liable for any damages which are the proximate result of that breach." (*Neal* v. *Farmers Ins. Exchange* (1978) 21 Cal.3d 910, 925 [148 Cal.Rptr. 389, 582 P.2d 980].)

In the present case, there is no dispute that defendant is liable in tort for its bad faith refusal to pay plaintiffs for expenses covered by the policies. It is equally clear that defendant's breach of its duty to deal fairly and in good faith caused plaintiffs to incur legal expenses. If defendant had timely paid Austero's claims, plaintiffs would have had no reason to seek the assistance of an attorney. Instead, plaintiffs were forced to retain attorneys to obtain the benefits under the policies. Defendant did not pay the policy benefits until after the jury returned an unfavorable verdict in the second trial of this action.[1] These facts lead to the same conclusion reached by Justice Kaus writing for a unanimous court in *Mustachio*, "If the insurer, instead of bargaining with the insured in good faith, tortiously violates its covenant of good faith and fair dealing and thereby makes it reasonable for the insured to seek the protection of counsel, plain justice [and, I would add, Civ. Code, § 3333] demands that the insurer be financially responsible for an expense which but for its tortious conduct would not have been incurred." (44 Cal.App.3d, at p. 364.)

The majority's reliance on Code of Civil Procedure section 1021 and cases interpreting that section is misplaced. Section 1021 leaves to the agreement of the parties "the measure and mode of compensation of attorneys." However, here, as in the third party tort situation, "we are not dealing with 'the measure and mode of compensation of attorneys' but with damages wrongfully caused by defendant's improper actions." (*Prentice* v. *North Amer. Title Guar. Corp.* (1963) 59 Cal.2d 618, 621 [30 Cal.Rptr. 821, 381 P.2d 645].) The majority recognizes that in the third party tort context, "the attorney fees incurred in litigating with the third person are recoverable as damages, like any other damages, in the action against the wrongdoer. [Citations.] In such cases there is no recovery of attorney fees qua attorney fees." (Majority opn., *ante*,

[1]It is not without significance that the insurance company's bad faith conduct forced plaintiffs to incur $200,000 in attorney's fees in order to collect the less than $25,000 in policy benefits that was owed them.

p. 412.) The majority fails to realize that the same is true of the attorney's fees that were recovered in the instant action.

When a pedestrian is struck by a car, he goes to a physician for treatment of his injuries, and the motorist, if liable in tort, must pay the pedestrian's medical fees. Similarly, in the present case, an insurance company's refusal to pay benefits has required the insured to seek the services of an attorney to obtain those benefits, and the insurer, because its conduct was tortious, should pay the insured's legal fees.

What seems to confuse the majority is that the plaintiffs are attempting to recover attorney's fees in the same action in which the fees were incurred. But, although this circumstance would preclude the recovery of attorney's fees in most cases, it should not operate as a bar in this case. Uncommonly, the present action has two distinct parts; indeed it should be viewed as two separate suits. Viewed in this manner, the dichotomy is clear. In the first suit, plaintiffs seek benefits due them under the insurance policies, while in the second suit, they seek to recover damages proximately caused by defendant's tortious conduct. The jury awarded as damages in the second suit those attorney's fees incurred in the prosecution of the first. No attorney's fees have been sought or awarded in either suit for prosecution of that very suit. Nor could they, for it is *that* type of attorney's fees award that is proscribed by Code of Civil Procedure section 1021.

The dual nature of the present action distinguishes this case from the *Lowell, Patterson,* and *Carroll*[2] cases and explains why those cases are improperly relied on by the majority and by *Twentieth Century-Fox Film Corp.* v. *Harbor Ins. Co.* (1978) 85 Cal.App.3d 105 [149 Cal.Rptr. 313]. *Lowell, Patterson,* and *Carroll* were not bad faith cases. The plaintiffs' entire actions there were comparable only to the first part of the present action, i.e., for benefits due under insurance policies. In none of those cases was any allegation of bad faith made, which is the gravamen of the second part of the present action. Thus, plaintiffs in *Lowell, Patterson,* and *Carroll* sought attorney's fees in an action for prosecution of that very action, or, as the majority states it, attorney's fees qua attorney's fees. Plaintiffs here, however, seek recovery of attor-

---

[2]*Lowell* v. *Maryland Casualty Co.* (1966) 65 Cal.2d 298 [54 Cal.Rptr. 116, 419 P.2d 180]; *Patterson* v. *Insurance Co. of North America* (1970) 6 Cal.App.3d 310 [85 Cal.Rptr. 665]; *Carroll* v. *Hanover Insurance Co.* (1968) 266 Cal.App.2d 47 [71 Cal.Rptr. 868].

ney's fees as damages, like any other damages, proximately caused by defendant's breach of its duty to deal in good faith.

By relying on *Lowell, Patterson*, and *Carroll* in the present case, the majority blurs the distinction between bad faith conduct and nontortious but erroneous withholding of benefits, a distinction that this court has scrupulously attempted to preserve in the past. We have clearly stated that an erroneous interpretation of an insurance contract by an insurer does not necessarily make the insurer liable in tort for violating the covenant of good faith and fair dealing; to be liable in tort, the insurer's conduct must also have been *unreasonable*.[3] (*Blake* v. *Aetna Life Ins. Co.* (1979) 99 Cal.App.3d 901, 918 [160 Cal.Rptr. 528]; *Austero* v. *National Cas. Co.* (1978) 84 Cal.App.3d 1 [148 Cal.Rptr. 653], disapproved on other grounds in *Egan* v. *Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 824, fn. 7 [169 Cal.Rptr. 691, 620 P.2d 141].) When no bad faith has been alleged and proved, *Lowell, Patterson*, and *Carroll* preclude the award of attorney's fees incurred in obtaining benefits that the insurer erroneously, but in good faith, withheld from the insured. However, when the insurer's conduct is unreasonable, a plaintiff is allowed to recover for all detriment proximately resulting from the insurer's bad faith, which detriment *Mustachio* has correctly held includes those attorney's fees that were incurred to obtain the policy benefits and that would not have been incurred but for the insurer's tortious conduct.

To the extent that the majority attempts to distinguish this case from *Mustachio*, the distinction is artificial. The only difference is that the insured's attorney was able to recover the benefits due under the policy by way of settlement in *Mustachio*, while here plaintiffs' lawyers were unable to recover the benefits without resorting to litigation. But, in both cases, the plaintiff is seeking recovery of those attorney's fees incurred in obtaining policy benefits which were tortiously withheld by the insurer. Whether or not litigation is required to obtain those benefits should not be material. Nor should it be of significance that the policy benefits are recovered in the same litigation that also adjudicates the plaintiffs' allegation of bad faith conduct on the part of the insurer.

In short, I believe that the correct law for this case was that which was recently summarized in *Biundo* v. *Old Equity Life Ins. Co.* (9th

---

[3]Indeed, the failure of the jury instructions to distinguish between an erroneous denial of coverage and unreasonable conduct is the very reason that we reversed the judgment in the first trial of this case.

Cir. 1981) 662 F.2d 1297, 1299, "Under California law, an insurer who wrongly refuses to pay a claim must compensate the insured for all damages caused by the refusal. When that refusal forces the insured to litigate when he ought not to have been required to go to court, necessary and reasonable counsel fees are part of his compensatory damages. *Mustachio v. Ohio Farmers Insurance Co., supra*, 44 Cal.App.3d 358, 364, 118 Cal.Rptr. 581, 584 (1975); *Dinkins v. American National Insurance Co.*, 92 Cal.App.3d 222, 234-35, 154 Cal.Rptr. 775, 782-83 (1979); *Leslie Salt Co. v. St. Paul Mercury Insurance Co.*, 637 F.2d 657, 662 (9th Cir. 1981). However, recovery of counsel fees may not exceed the amount attributable to the attorney's efforts to obtain the rejected payment due on the insurance contract. The insured may not collect attorney's fees incurred in pursuit of a bad faith claim or a claim for other damages. 'California [c]ases . . . foreclose an award of [attorney's fees] for legal services attributable to any portion of plaintiff's recovery which exceeds the amount due under the policy.' *Leslie Salt, supra*, 637 F.2d at 662, *quoting Dinkins, supra.*"

I would affirm the award of attorney's fees.

A petition for a rehearing was denied June 23, 1982, and respondents' petition for a hearing by the Supreme Court was denied August 4, 1982. Bird, C. J, Mosk, J., and Broussard, J., were of the opinion that the petition should be granted.